**The PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Dorothy W. THURMAN; James C.
Thurman; and Penny Kay Tyler,
Defendants–Appellees.**

No. 88SA251.

Supreme Court of Colorado,
En Banc.

March 5, 1990.

John Suthers, Dist. Atty., and David L. Geislinger, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, State Public Defender, and Martin J. Gerra, Deputy State Public Defender, Denver, for defendants-appellees.

Justice LOHR delivered the Opinion of the Court.

■ The prosecution appeals a judgment of the El Paso County District Court dismissing felony cocaine possession, distribution and conspiracy charges against the defendants, Dorothy W. Thurman, James C. Thurman and Penny Kay Tyler.[1] The prosecution asserts that the trial court abused its discretion in ruling that the defendants' rights to confront the only eyewitness against them, a confidential informant, required that the prosecution comply with the court's order to divulge the witness's address and current place of employment despite the witness's fears for her safety. The trial court ruled that the prosecution's refusal to comply with the disclosure order required dismissal of the charges against the defendants.[2] We affirm.

I.

On December 17, 1987, the district attorney filed an Information in El Paso County District Court charging Dorothy W. Thurman, James C. Thurman and Penny Kay Tyler ("defendants") with felony cocaine possession, distribution and conspiracy counts based on events that allegedly oc-

---

1. We have jurisdiction of this prosecutorial appeal under § 16–12–102(1), 8A C.R.S. (1986), and C.A.R. 4(b)(2). Notice of appeal was filed on July 22, 1988. The Colorado Court of Appeals has jurisdiction of all prosecutorial appeals brought on or after August 1, 1988, based on an amendment to C.A.R. 4(b)(2) effective on that date.

2. The court's disclosure order evolved through a series of hearings and partial compliances by the prosecution, as detailed in this opinion. Although at various times the parties disputed whether the defendants had a right to learn the witness's identity, criminal record, employment history, prior record for providing accurate information, and the results of treatment for use of drugs, ultimately dismissal was based upon the prosecution's refusal to disclose the witness's address and current place of employment.

curred in Colorado Springs between October 26, 1987, and December 2, 1987. The charges against the defendants were based on events surrounding three purported sales of small quantities of cocaine to a confidential police informant, identified as "CI 606," on October 26, November 4, and November 30, 1987. CI 606 was the sole eyewitness to the alleged sales. No police officers witnessed the sales, either in person or through the use of electronic surveillance. CI 606 was endorsed as a potential prosecution witness, but the identity of the witness was not revealed.

Included among the pre-trial motions filed by counsel for each defendant were motions that the prosecution be ordered to reveal the identity, location and criminal history of CI 606. The trial court held several pre-trial hearings to consider defense motions. At the initial hearing on March 25, 1988, the court heard arguments from counsel for two of the defendants, James C. Thurman and Penny Kay Tyler, concerning their motions for disclosure of information about the confidential informants.[3] Counsel argued that the information requested was critical to preparation of each defendant's case, and that their clients' sixth amendment rights to confront the witnesses against them would be compromised without it.

In response, the prosecution offered to make CI 606 available to defense counsel for an interview and to reveal her criminal record, but not her name or address, in lieu of full disclosure, arguing that such a compromise would satisfy the defendants' sixth amendment rights while protecting the witness from the defendants and allowing the police to continue employing her services to secure information.[4] After the trial court expressed its view that the prosecution's proposal was "novel" but "not satisfactory," the prosecution suggested that the court apply a balancing test, weighing the defendants' rights to the information to prepare their cross-examination of CI 606 against the prosecution's desire to maintain her confidentiality. The prosecution repeated its view that the defendants' confrontation rights could be served by permitting the defense to interview CI 606 and later to cross-examine her at trial without disclosing her name or address.

Defense counsel, on the other hand, argued against qualifying the defendants' rights to confront the only eyewitness to the alleged crimes. The trial court elected not to rule on the motion from the bench. On April 4, 1988, before holding a second pre-trial hearing on unrelated matters, the trial court ordered the prosecution to give the defense CI 606's name, "rap sheets" and all other background information known to it, and to make her available for an interview by defense counsel.

The disclosure issue arose again at a June 20, 1988, pre-trial hearing attended by counsel for all three defendants. At that time, counsel for defendant Dorothy W. Thurman informed the trial court that the prosecution had revealed CI 606's name and had allowed an investigator in defense counsel's office to interview her. Counsel stated that during the interview, CI 606 admitted her participation in "a couple of drug treatment programs as of late and [that she] is an addict." The informant stated that she was not "working off any deals," that is, working as a police informant in exchange for the dismissal of criminal charges. CI 606 refused, however, to disclose the results of drug treatment programs in which she had participated.

Based on information gleaned from the interview, the defense requested that the trial court order the prosecution to provide additional information concerning CI 606's credibility.[5] The trial court granted the

---

3. Although counsel for defendant Dorothy W. Thurman was not present at the March 25, 1988, hearing, the trial court appeared to consider the arguments by counsel for the other two defendants applicable to Ms. Thurman's motion as well.

4. From the beginning, the prosecution referred to CI 606 as a woman.

5. Defense counsel requested the following information:

(1) a statement from the prosecutor describing CI 606's "batting average" (percentage of information she had provided to the police department in the past that had proved reliable); (2) whether CI 606 was enrolled in a drug treatment program at the times the defendants alleg-

request in part and denied it in part. The prosecution was ordered to provide the defense with CI 606's "batting average," or percentage of information provided the police department in the past that had proved reliable, with a formal statement that CI 606 had not received any deals in exchange for information, and with information concerning any drug rehabilitation programs in which CI 606 had participated and concerning which the state had any involvement or information. In conclusion, the court ruled that "information available to the prosecution will be required to be shared with the defense."

The prosecution then requested that the trial court enter a specific ruling as to whether its disclosure order encompassed CI 606's current address, employment history and current place of employment, to which the trial court responded, "[i]f you know it, give it to [defense counsel]." The prosecutor initially agreed, but then informed the trial court that CI 606 did not want her employment history revealed. Dorothy W. Thurman's attorney in turn stipulated that counsel for the defendants would not divulge the information to their clients if CI 606's reluctance was based on fears for her safety. The trial court accepted the stipulation and repeated its order that the prosecution make the information known to it or to the police department available to defense counsel, placing defense counsel under an obligation to keep the information to themselves and their investigators and away from their clients.

The prosecution did not disclose the present or prior addresses of CI 606 or the name and address of her employer as required by the disclosure order. Counsel for two of the defendants, Penny Kay Tyler and James C. Thurman, then filed motions to dismiss the Information or, in the alternative, to strike CI 606 from the district attorney's witness list.[6]

The trial court considered the motions to dismiss at a hearing held on July 15, 1988. The prosecution explained that its failure to comply with the disclosure order stemmed in part from the police department's refusal to cooperate. The prosecution made an offer of proof that CI 606 feared that harassment, retaliation and embarrassment would result if the information requested were revealed to defense counsel. The prosecution added that defendant Dorothy W. Thurman had a history "indicating a number of assaults, assaultive arrests, aggravated robbery arrest, I believe three felony assault arrests," although none of the assaults had resulted in a conviction, and concluded by urging the trial court to exercise its discretion under Crim.P. 16(I)(e)(2)[7] to disallow the earlier-ordered disclosure.

edly sold cocaine to her; (3) fingernail and hair samples, to be tested for evidence of cocaine addiction; (4) results of any polygraph exam of CI 606 and "agents in the narcotics branch" involved in the defendants' cases; (5) a statement by the prosecution outlining any deals between the police department or prosecutor's office and CI 606, including charges not pursued against her, in return for her agreement to provide information; and (6) the amount of compensation paid CI 606 by the police in exchange for information.

In response, the prosecution agreed to provide a statement to the defense regarding CI 606's "batting average," stated that, to the district attorney's knowledge "at this point," neither the district attorney's office nor the police department had dropped or declined to pursue charges against CI 606 as part of a deal, and admitted that CI 606 was paid $50 for each of the alleged drug purchases, adding that CI 606, not the police, instigated her work as a confidential informant. The prosecution declined, however, to provide the results of any drug treatment CI

606 may have undergone, fingernail or hair samples or polygraph results.

The trial court denied the request for fingernail and hair samples and delayed its ruling on the request for polygraph results.

6. Counsel for defendant Dorothy W. Thurman did not file a motion to dismiss but, along with counsel for the other two defendants, had earlier filed a motion to join all other motions, which the trial court granted.

7. Crim.P. 16(I)(e) states:

(1) The court in its discretion may require disclosure to defense counsel of relevant material and information *not covered by Part I(a), (b), and (c) above* upon a showing of materiality to the preparation of the defense, and if the request is reasonable.

(2) The court may deny disclosure *authorized by this section* if it finds that there is substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrass-

Defense counsel urged dismissal, arguing that CI 606's address, employment history and current place of employment were critical to obtain information for the purpose of impeaching the witness, and that the relative credibility of CI 606 and the defendants would be the sole issue at trial. The defense pointed out that the prosecution's offer of proof contained no evidence of threats against CI 606, and that the trial court's order that defense counsel keep the information about CI 606 confidential removed any reasonable basis for her fears. The defense further noted the additional safeguard posed by the mandatory restraining order imposed against every criminal defendant in the state under section 18–1–1001, 8B C.R.S. (1986).[8]

Before ruling on the motion, the trial court asked the prosecution whether dismissal of the case was the appropriate solution to the dilemma. When the prosecution stipulated that, in absence of a modification of the discovery order to eliminate the requirement of providing the witness's address and place of employment, dismissal would be the appropriate remedy, and did not suggest any less severe remedy, the trial court dismissed the charges against all three defendants.[9]

## II.

The prosecution maintains that the trial court abused its discretion in dismissing the charges against the defendants upon the prosecution's refusal to disclose CI 606's address and current place of employment to defense counsel. The prosecution points out that a defendant's right to confront adverse witnesses is not absolute, and contends that when, as here, the prosecution refuses to disclose this .information due to its witness's fear for her personal safety, the trial court must balance the competing interests of the defendant and the witness before striking the witness or

---

ment, resulting from such disclosure, which outweighs any usefulness of the disclosure to defense counsel.

(Emphasis added.) Because the information referred to in Part I(a) includes "the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial," Crim.P. 16(I)(e) is inapplicable in this case. Likewise, Crim.P. 16(I)(f)(2) does not authorize the prosecution to withhold information concerning witnesses who will testify against a defendant. That rule provides in pertinent part:

Disclosure shall not be required of an informant's identity where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. *Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial.*

(Emphasis added.)

8. § 18–1–1001(1), 8B C.R.S. (1986), provides:

There is hereby created a mandatory restraining order against any person charged with a violation of any of the provisions of this title, which order shall remain in effect from the time that the person is advised of his rights at arraignment or the person's first appearance before the court and informed of such order until final disposition of the action or until further order of the court. Such order shall restrain the person charged from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged.

9. The trial court ruled as follows:

THE COURT: The Court has previously considered the law and the necessity of granting the Defendant's [sic] request for disclosure of the confidential informant in this case, and The Court has previously ruled that under the circumstances of this case the disclosure was required and The Court ordered that that disclosure be an effective disclosure and one which would allow the defense to properly investigate the witness so that they could determine if there is any evidence to attack her reputation for truthfulness in a community where she works and lives.

And The Court, feeling that that is a perfect right of the defense to be able to attack the credibility of the witness, and The Court, being advised at this time that the prosecution is unable, through command decisions in the Police Department, to provide that, and The Court being, in effect, advised that the police are refusing to provide that information based on their perception of the danger of the defendants to the witness, The Court having considered the protective orders that had been previously entered and the defendant's prior record of violence, The Court will now conclude that the prosecution is failing to comply with The Court's order.

There is no way The Court can modify the order to adequately protect the rights of the defendants, and the District Attorney having stipulated that the judicially efficient remedy would be dismissal if The Court were going to reach this conclusion, The Court now hereby orders the case against the Defendants dismissed.

dismissing the charges against the defendant. The prosecution argues that the weight to be given a defendant's confrontation rights varies depending on the materiality of the information sought, and does not concede that information required for impeachment is inevitably material. Nonetheless, it asserts that even if such information is inevitably material, once the prosecution makes some showing of danger to the witness, the burden of going forward shifts to the defendant and the defendant must then demonstrate that nondisclosure would prevent him from pursuing a line of inquiry "inevitably" leading to the discovery of impeachment material sufficiently damaging to outweigh the witness's apprehension. According to the prosecution, the trial court abused its discretion in dismissing the charges against the defendants without first requiring this showing by the defense and adequately addressing the witness's interest in nondisclosure. For the reasons set forth below, we hold that the trial court did not abuse its discretion.

### A.

■ The United States and Colorado Constitutions guarantee an accused the right to be confronted with the witnesses against him. U.S. Const. amend. VI; Colo. Const. art. II, § 16.[10] This right is a fundamental element in the panoply of constitutional protections afforded a person accused of crime. *People v. Rubanowitz,* 688 P.2d 231, 243 (Colo.1984). The right of confrontation includes the right of cross-examination. *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965); *People v. Bowman,* 669 P.2d 1369, 1375 (Colo.1983). The United States Supreme Court has stated that the "permissible purposes" of the right of cross-examination include, among others,

> that the witness may be identified with his community so that independent testimony may be sought and offered of his

reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased.

*Alford v. United States,* 282 U.S. 687, 691–92, 51 S.Ct. 218, 219–20, 75 L.Ed. 624 (1931) (citations omitted).

In *Alford v. United States,* the United States Supreme Court unanimously reversed a federal mail fraud conviction because the trial court denied the accused the opportunity to elicit the place of residence of an important prosecution witness. Noting that cross-examination is necessarily exploratory, and accordingly that "[c]ounsel often cannot know in advance what pertinent facts may be elicited on cross-examination," *id.* at 692, 51 S.Ct. at 219, the Court stated that "the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply." *Id.* The Court reasoned:

> It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Id.* at 692, 51 S.Ct. at 219 (citations omitted).

■ The government's refusal to reveal the identity of a police informant who is

<hr/>

10. U.S. Const. amend. VI guarantees the accused in a criminal prosecution the right "to be confronted with the witnesses against him." The confrontation clause of the sixth amendment to the United States Constitution is applicable to the states under the fourteenth amendment.

*Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Article II, § 16, of the Colorado Constitution guarantees the accused the right "to meet the witnesses against him face to face."

*not* a witness against the defendant has been clearly distinguished from its refusal to do so where the informant is also a witness. The former does not deny the accused's right of confrontation; in the latter situation, the witness's identity generally must be revealed. J. Cook, *Constitutional Rights of the Accused* § 18.9 (2d ed. 1986) (citing cases); *see Smith v. Illinois,* 390 U.S. 129, 133 n. 8, 88 S.Ct. 748, 751 n. 8, 19 L.Ed.2d 956 (1968); *People v. Langford,* 191 Colo. 87, 90, 550 P.2d 329, 331 (1976).

In *Smith v. Illinois,* the United States Supreme Court reviewed a state conviction for illegal sale of narcotics. The outcome of the trial turned on the relative credibility of the defendant and the government's principal informant-witness, a man who identified himself on direct examination as "James Jordan." On cross-examination, the defense was permitted to elicit the fact that "James Jordan" was not the witness's true name, but was denied the opportunity to ask his correct name or current address. The Court reversed the conviction, reasoning that

> when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Smith,* 390 U.S. at 131, 88 S.Ct. at 750 (quoting *Pointer,* 380 U.S. at 404, 85 S.Ct. at 1068).

### B.

■ An accused's right to confront and to cross-examine witnesses, however, is not absolute. *See Alford,* 282 U.S. at 694, 51 S.Ct. at 220; *People v. Cole,* 654 P.2d 830, 833 (Colo.1982). "The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court," *Alford,* 282 U.S. at 694, 51 S.Ct. at 220, which is under a duty to protect a witness "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him." *Id.* In his concurring opinion in *Smith v. Illinois,* Justice White stated that to the areas enumerated in *Alford* as going beyond the bounds of proper cross-examination, he would add "those inquiries which tend to endanger the personal safety of the witness." *Smith v. Illinois,* 390 U.S. at 133–34, 88 S.Ct. at 750–51 (White and Marshall, JJ., concurring). Justice White stated that if personal safety is invoked to avoid an area of cross-examination that is ordinarily permissible, "the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question." *Id.* at 134, 88 S.Ct. at 751. At that point, "[t]he trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling." *Id.*

■ Justice White's "personal safety exception" to the universal rule of *Alford* and *Smith,* although never adopted by a majority of the Court, has been widely cited and applied by lower federal courts.[11] The

---

**11.** *See, e.g., United States v. Mesa,* 660 F.2d 1070, 1076 (5th Cir.1981) (trial court did not err in approving nondisclosure of government witness's current address; witness had received actual death threats before trial and during recess, defense knew witness's identity, current place of employment and recent former address, giving defense "ample opportunity to identify the witness with his environment."); *United States v. Watson,* 599 F.2d 1149 (2d Cir.) (given serious actual threat on life of prosecution witness in Witness Protection Program and otherwise extensive cross-examination, trial court did not abuse its discretion in barring

questions about witness's support for his family, price of his car, and his employment), *modified,* 690 F.2d 15 (2d Cir.1979); *United States v. Rangel,* 534 F.2d 147 (9th Cir.) (informant-witness whose life had been threatened, forcing him to relocate his family, not required to divulge true name, address or telephone number; based on evidence of threat adduced at *in camera* hearing, government's representations of threats to witness were not groundless), *cert. denied,* 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976); *McGrath v. Vinzant,* 528 F.2d 681 (1st Cir.) (given nature of crime charged (rape) and otherwise complete revelation of complaining wit-

prosecution points to a number of those cases, each a highly fact-specific decision affirming a trial court's exercise of discretion in applying *Alford* and *Smith*, as conclusively demonstrating that the trial court in the case before us abused its discretion. A reading of these cases demonstrates that a witness's assertion of concern for personal safety does not have a talismanic quality automatically giving the witness the right to withhold information about identity, address and place of employment. Rather, the proper resolution of such issues requires careful attention to the facts of each case and application of the law concerning the right of an accused to confront adverse witnesses.

Colorado has also recognized a "personal safety exception." In *People ex rel. Dunbar v. District Court*, 177 Colo. 429, 494 P.2d 841 (1972), we held that the trial court abused its discretion in dismissing an Information after the prosecution's principal witness at a preliminary hearing, a Colorado Bureau of Investigation agent, refused to disclose his address. The witness had disclosed his identity and place of employment, but explained that the trailer furnished him by the Bureau, in which he lived while on the road, had been blown up; that Bureau intelligence indicated that there was a "contract" out on his life; and that he was concerned about his family's safety. *Dunbar*, 177 Colo. at 431, 494 P.2d at 842. The trial court, however, ruled that *regardless* of any safety considerations, the witness was required to answer.

In *Dunbar*, we recognized both the general rule that the right of confrontation includes the right to elicit a witness's address by cross-examination and the exception to that rule outlined in *Alford* for

questions intended merely to harass, annoy or humiliate the witness, as well as the "personal safety exception" advanced by Justice White in his concurrence to *Smith v. Illinois*. *Dunbar*, 177 Colo. at 432, 494 P.2d at 843. We also cited with approval *United States v. Baker*, 419 F.2d 83 (2d Cir.1969), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970), in which the Second Circuit Court of Appeals held that the trial court exercised its discretion properly in upholding a witness's refusal to disclose his place of employment, noting that the defense in that case had received materials concerning the witness's background that enabled defense counsel to cross-examine the witness fully and effectively without the information concerning his place of employment. *Dunbar*, 177 Colo. at 433, 494 P.2d at 843.

We then discussed each party's respective responsibilities when a defendant's right to information about a witness is at stake. Placing the initial burden on the witness or prosecution, we stated that "the danger claimed by the witness must in some way relate to the particular defendant. There must be a nexus such that the witness legitimately fears reprisal from the defendant or his associates." *Id.* "[A]fter the witness [has] made a showing that his safety would be endangered if he answered," the defendant has the duty to show that the information sought has "some materiality." *Id.* Applying these principles, we held that the trial court abused its discretion in ordering the witness to disclose his address "without some showing by the defendant that the disclosure was so material as to outweigh the matter of the safety of the witness," and without "bal-

ness's identity, former address and current place of employment, trial court did not violate defendant's constitutional right to confrontation by sustaining objection to question seeking disclosure of witness's current address), *cert. dismissed*, 426 U.S. 902, 96 S.Ct. 2221, 48 L.Ed.2d 827 (1976); *United States v. Smaldone*, 484 F.2d 311 (10th Cir.1973) (trial court did not abuse its discretion in sustaining the government's objection to a question seeking to elicit prosecution witness's current address; witness required protection, and defendant knew where witness lived and what his business was through exten-

sive pre-trial discovery and cross-examination), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974); *United States v. Baker*, 419 F.2d 83 (2d Cir.1969) (trial court did not abuse its discretion in allowing prosecution witness who testified that he had received actual death threats from defendant, who claimed to have carried out a similar threat on another occasion, to refuse to disclose place of employment; defense was otherwise able fully to cross-examine witness), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970).

ancing [ ] the rights of the witness to protect his life [ ] against defendant's right of confrontation." *Dunbar*, 177 Colo. at 434, 494 P.2d at 844.

The principles enunciated in *Dunbar* remain sound. The prosecution argues, however, that under *Dunbar* the trial court must find that the withheld information would inevitably lead to impeachment material sufficiently material to outweigh the witness's safety concerns. This stretches *Dunbar* beyond its natural limits.

■ *Dunbar* places the burden on the prosecution to offer an explanation when it objects to the revelation of information about the witness. *Dunbar*, 177 Colo. at 433, 494 P.2d at 843; *see United States v. Alston*, 460 F.2d 48, 53 (5th Cir.), *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972). A defendant is presumptively entitled to cross-examine a prosecution witness as to the witness's address and place of employment. *United States v. Navarro*, 737 F.2d 625, 633 (7th Cir.), *cert. denied*, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984). Absent sufficient justification for withholding this information, a defendant's right to it is unqualified, and the defendant is under no obligation to provide reasons for seeking it. *McGrath v. Vinzant*, 528 F.2d 681, 685 (1st Cir.), *cert. dismissed*, 426 U.S. 902, 96 S.Ct. 2221, 48 L.Ed.2d 827 (1976). The prosecution's showing must consist of more than the mere expression of apprehension by a witness who is reluctant to divulge her identity, address or place of employment. *United States v. Fife*, 573 F.2d 369, 376 (6th Cir.1976), *cert. denied*, 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977). Ideally, the witness or the prosecution will provide the trial court, outside the presence of the jury, with a factual basis for the witness's apprehension, *id.*, such as evidence of an actual threat to the witness. *See State v. Hassberger*, 350 So.2d 1, 5 (Fla. 1977). At minimum, however, "the danger claimed by the witness must in some way relate to the particular defendant. There must be a nexus such that the witness legitimately fears reprisal from the defendant or his associates." *Dunbar*, 177 Colo. at 433, 494 P.2d at 843.

■ Because the prosecution in *Dunbar* met its burden by showing a clear factual basis for the witness's fear for his personal safety, we held that the trial court erred in requiring that the witness disclose his address regardless of any safety considerations. Given the prosecution's prima facie showing of danger to the witness, the trial court's failure to balance the witness's interests against the defendant's amounted to an abuse of discretion. Our statement in *Dunbar* that an adequate showing by the prosecution that the witness legitimately fears for his safety requires some showing in turn by the defendant "that the disclosure [is] so material as to outweigh the matter of the safety of the witness," followed by a balancing of interests by the trial court, *Dunbar*, 177 Colo. at 434, 494 P.2d at 844, should not be interpreted as requiring a threshold demonstration by the defendant that the information to be developed from learning the witness's identity, address and place of employment would prove highly material. It usually would be impossible, prior to disclosure, for a defendant to state facts showing the materiality of a witness's identity, address or place of employment or to prove that disclosure would inevitably lead to impeaching material. The defendant's burden extends only to showing that the confidential informant is a material witness on the issue of guilt and that nondisclosure would deprive the defendant of a fair opportunity to test the witness's credibility.

■ The trial court, in exercising its sound discretion, is in the best position to assess the basis for and seriousness of the witness's apprehension. When such apprehension is expressed, the key consideration for a trial court in assessing a defendant's constitutional claim to a witness's identity, address or place of employment is whether in absence of that information the defendant will have sufficient "opportunity to place the witness in his proper setting." *Smith v. Illinois*, 390 U.S. at 132, 88 S.Ct. at 750 (quoting *Alford*, 282 U.S. at 692, 51 S.Ct. at 219); *accord United States v.*

*Mesa,* 660 F.2d 1070, 1075 (5th Cir.1981); *McGrath,* 528 F.2d at 685.

Accordingly, our inquiry must focus on whether the trial court abused its discretion in ruling that CI 606's fears for her personal safety did not justify encroachment on the defendants' rights to confront and cross-examine her by use of her address and place of employment, because without that information the defense would be unable to place CI 606 in her proper setting.

### III.

 The decision to order disclosure of CI 606's address and place of employment was committed to the sound discretion of the trial court. *See Alford v. United States,* 282 U.S. at 694, 51 S.Ct. at 220; *Dunbar,* 177 Colo. at 434, 494 P.2d at 844. A reviewing court called upon to address a matter within the sound discretion of the trial court will not reverse the trial court's ruling unless it constitutes a clear abuse of discretion. *See People v. District Court,* 664 P.2d 247, 252 (Colo.1983). If there is evidence in the record to support the trial court's order compelling disclosure despite CI 606's apprehension, the prosecution's willful refusal to comply with that order was properly sanctioned by the trial court under Crim.P. 16(III)(g).[12] "A trial judge has broad discretion in ... fashioning remedies for violations of a discovery order under Crim.P. 16(III)(g)." *People v. District Court,* 664 P.2d at 252; *see also People v. Lyle,* 200 Colo. 236, 240, 613 P.2d 896, 899 (1980).

The trial court did not unhesitatingly order public disclosure of CI 606's address and place of employment. The court sought to protect the defendants' confrontation rights by ordering defense access to CI 606 along the lines proposed by the prosecution. After the defense interviewed CI 606 and learned more about her, it became even more important that her co-workers and neighbors be asked about her reputation for truth, and that her background be thoroughly delved into to ascertain her credibility. When the prosecution informed the trial court that it was unwilling to reveal CI 606's address or place of employment because of her concerns for her safety, the defense suggested that the trial court might allay her fears by ordering the prosecution to reveal the information to defense counsel alone after imposing an obligation not to divulge the information to the defendants. The trial court accepted the suggestion and entered an order to that effect. The prosecution did not protest the order until later, when it became clear that the police department would not cooperate. The prosecution then made an offer of proof to support CI 606's fears.

CI 606 received no actual threat, nor were there any rumors of one. CI 606's fears were based instead on the fact that Dorothy W. Thurman had a history of criminal conduct, including arrests for assault, but no convictions, and on CI 606's status as a police informant. Before ruling on the motions to dismiss, the trial court gave the prosecution another chance to suggest a solution to the problem. Instead, the prosecution stipulated that dismissal of the charges against the defendants would be the appropriate solution if the trial court did not abrogate the disclosure order.

Given that no actual threat was made against CI 606; that the trial court attempted to accommodate all parties by limiting disclosure to defense counsel alone; that *both* CI 606's address and place of employment were withheld; and that without the sought-after information the defense could not place CI 606 in her proper setting, we conclude that the trial court acted within the bounds of its discretion in dismissing the Information against the de-

---

12. Crim.P. 16(III)(g) provides as follows:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed *or enter such other order as it deems just under the circumstances.*
 (Emphasis added.)

fendants. We affirm the judgment of the El Paso County District Court.

VOLLACK, J., does not participate.