The PEOPLE of the State of Colorado,
Plaintiff–Appellee and Cross–
Appellant,

v.

Aaron J. VICTORIAN, Defendant–
Appellant and Cross–Appellee.

No. 05CA0234.

Colorado Court of Appeals,
Div. VI.

Feb. 22, 2007.

Rehearing Denied April 12, 2007.

Certiorari Denied Aug. 27, 2007.

§ 24–51–1105, C.R.S.2006.

John W. Suthers, Attorney General, Jonathan Patrick Fero, Assistant Attorney General, Denver, Colorado; John R. Newsome, Jr., District Attorney, William B. Bain, Senior Deputy District Attorney, Doyle Baker, Dep-

uty District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

McClintock & McClintock, P.C., Theodore P. McClintock, Elizabeth A. McClintock, Colorado Springs, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge RUSSEL.

Defendant, Aaron J. Victorian, appeals the judgment of conviction that was entered after a jury found him guilty of sexual assault on a child under fifteen years of age by a person in a position of trust (as part of a pattern of abuse), aggravated incest, and attempted sexual contact. The People cross-appeal from a ruling that allowed defendant to have surgery before he was sentenced. We affirm the judgment and approve the trial court's ruling.

## I. Background

Defendant was charged with sexually assaulting three of his daughters, E.V., A.D., and K.V. He was also charged with attempting to sexually assault one of his female employees, L.F.

Before trial, the court dismissed the charges that concerned E.V. and A.D. Defendant was tried and convicted of the remaining charges.

After trial, defendant asked that he be allowed to have surgery by his own doctor. The court granted defendant's request. It ruled that defendant would be confined to his home while he recovered.

Thirty days after the surgery, the trial court sentenced defendant to prison for an indeterminate term of fifteen years to life.

## II. Other Act Evidence

Defendant contends that the trial court erred in admitting evidence of other sexual assaults. We disagree.

■ Evidence of other crimes, wrongs, or acts is inadmissible if its relevance depends upon an inference that the person has a bad character and acted in conformity with that character. *People v. Spoto,* 795 P.2d 1314, 1318 (Colo.1990). A trial court's deci-sion to admit other act evidence is reviewed only for an abuse of discretion. *Masters v. People,* 58 P.3d 979, 996 (Colo.2002).

### A. Testimony of E.V. and A.D.

■ We first consider whether the trial court properly admitted evidence that defendant had previously committed sexual assaults against his daughters E.V. and A.D. Defendant argues that this evidence should have been disallowed, not because it was irrelevant, but because its admission violated defendant's due process rights under the principles articulated in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

We reject this argument.

#### 1. Pertinent Events

In 1997, defendant was charged with sexually assaulting E.V. and A.D. As part of the investigation in that case, videotaped interviews were conducted with each victim. The charges against defendant were later dismissed, and the videotapes were destroyed by the district attorney's office as part of its routine practice.

In 2002, when K.V. and L.F. came forward with new sexual assault allegations against defendant, the charges concerning E.V. and A.D. were reinstated. Defendant moved to dismiss those charges, arguing, among other things, that the destruction of the videotapes violated his right to due process under *Brady.*

The trial court granted defendant's motion. The court ruled that the charges must be dismissed because the prosecution had failed to follow the procedures set forth in Crim. P. 7(c)(2). The court also found that, although the prosecution had not acted in bad faith, the destruction of the videotapes had "adversely affect[ed]" defendant's due process rights because the videotaped interviews "may well have been exculpatory."

The court later granted the prosecution's motion to admit the testimony of E.V. and A.D. as other act evidence. The court ruled that its earlier order did not control the decision whether to admit evidence of these

assaults under CRE 404(b) and § 16–10–301, C.R.S.2006.

### 2. Discussion

*Brady* and its progeny govern a defendant's due process right to receive material exculpatory evidence. Here we are concerned with the line of *Brady* cases that governs the suppression of evidence where the government no longer has the evidence.

■ To establish a due process violation for failure to preserve exculpatory evidence, the defendant must show three things: (1) the evidence was destroyed by state action; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *People v. Braunthal*, 31 P.3d 167, 173 (Colo.2001).

■ If the evidence was not apparently exculpatory when it was destroyed and was merely potentially useful, the defendant must show that the state agents acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *People v. Wyman*, 788 P.2d 1278 (Colo.1990).

Here, it is undisputed that the videotapes were destroyed by the prosecution. And we assume, without deciding, that the videotapes were apparently exculpatory with respect to the charges involving E.V. and A.D. We nevertheless reject defendant's due process claim for three reasons:

1. Defendant failed to establish a claim under *Trombetta* because he did not show that the tapes, when destroyed, had apparent exculpatory value with regard to the allegations involving K.V. and L.F. (These allegations did not surface until after the tapes had been destroyed.)

2. Defendant failed to establish a claim under *Youngblood* because he did not show that the prosecution acted in bad faith.

3. Defendant failed to establish a claim under *Trombetta* or *Youngblood* because he did not show that any exculpatory information contained on the videotapes was unavailable through other sources. Defendant was able to cross-examine E.V. and A.D. and was allowed to call, as a defense witness, the prosecutor who dismissed the earlier charges concerning these victims. *See Olszewiski[Olszewski] v. Spencer*, 466 F.3d 47, 58 (1st Cir.2006) (*Youngblood* did not eliminate *Trombetta's* irreplaceability requirement).

We therefore conclude that the trial court properly admitted evidence of defendant's sexual assaults against E.V. and A.D.

### B. Testimony of M.M.

■ Defendant contends that the trial court erred in admitting evidence that he had sexually assaulted another daughter, M.M. He argues that the assault was dissimilar from the charged offenses and too remote in time to be admissible. We disagree.

Evidence that defendant sexually assaulted M.M. eighteen years earlier was logically relevant to rebut the suggestion that K.V. and L.F. had fabricated their allegations. *See* § 16–10–301. Because this theory of relevance does not depend on temporal proximity or exacting similarity, we need not compare and contrast the factual details of the various assaults. *See Dennis v. State*, 178 S.W.3d 172, 179 (Tex.App.2005) (exacting similarity is not required when other act evidence is admitted to rebut a theory of fabrication); *Hart v. State*, 57 P.3d 348 (Wyo. 2002) (evidence of sexual assaults that occurred more than twenty-five years earlier was properly admitted, in part, to rebut a theory of fabrication). Instead, we conclude that the trial court did not abuse its discretion in admitting the evidence. *See People v. Martinez*, 36 P.3d 154 (Colo.App.2001).

### III. Disqualification

■ Defendant contends that the trial court abused its discretion in denying his motion to disqualify the district attorney. We disagree.

A defendant may force the disqualification of a district attorney on either of two grounds: (1) the district attorney has a per-

sonal or financial interest in the case; or (2) there are "special circumstances that would render it unlikely that the defendant would receive a fair trial." Section 20-1-107(2), C.R.S.2006.

Defendant argues that disqualification was required because a deputy district attorney was called to testify as a defense witness. Assuming, without deciding, that this event was a "special circumstance" within the meaning of § 20-1-107(2), we conclude that defendant failed to demonstrate that he was unlikely to receive a fair trial. The testimony of the deputy district attorney was entirely favorable to defendant; its significance would not have been enhanced had the case been prosecuted by a different office; and it was not material in any event. The deputy district attorney merely explained why he had previously dismissed the charges involving victims E.V. and A.D.

### IV.  Witness's Address

■ Defendant contends that the trial court violated his confrontation rights by refusing to require a witness to disclose her home address. We disagree.

■ A witness's address ordinarily must be disclosed so that the defendant may investigate the witness's reputation for veracity in his or her community. *People v. Thurman,* 787 P.2d 646, 651 (Colo.1990). However, the address may be kept confidential if the prosecution shows that the witness legitimately fears reprisal from the defendant or the defendant's associates. *People v. Thurman, supra,* 787 P.2d at 653. If the prosecution shows that the witness's safety may be endangered, the defendant must show that the information sought has some materiality sufficient to outweigh the interest in protecting the witness's security. *People v. Turley,* 870 P.2d 498, 500 (Colo.App.1993).

We review the trial court's decision for an abuse of discretion. *People v. Thurman, supra.*

Here, the prosecution asked to keep P.F.'s address confidential. At a pretrial hearing, the prosecutor stated that P.F. was afraid that defendant would retaliate against her or her family if she testified. The prosecutor

stated, however, that P.F. would be willing to provide her telephone number and would agree to be interviewed by defense counsel.

Defense counsel argued that the prosecutor's offer of proof was insufficient because there was no indication that defendant had contacted or threatened P.F. Counsel asserted that, without P.F.'s home address, it would be "virtually impossible ... to effectively investigate and cross-examine her."

The court ruled that P.F. would not be required to disclose her home address. For two reasons, we conclude that this decision was not an abuse of discretion.

First, to the extent that the prosecutor's pretrial offer was insufficient, the deficiency was cured by P.F.'s trial testimony. P.F. stated that defendant had sexually assaulted her when she was sixteen. She said that, after the assault, defendant told her that she would be "in a lot of trouble" if she told anyone. Given the forcible nature of the assault, and its resultant effect on P.F., the record supports a reasonable inference that P.F. legitimately feared for her safety.

Second, defendant has failed to show that the court's ruling deprived him of his confrontation rights. Defense counsel could have interviewed P.F. over the phone and in person, and he was able to cross-examine P.F. at trial. To the extent that defense counsel wanted to investigate P.F.'s reputation for truthfulness, we conclude that this effort would have been of marginal utility because defendant was previously convicted of the assault against her.

### V.  Prosecution's Appeal

■ We now turn to the prosecution's appeal. We do so reluctantly because we would prefer to expend our limited resources on problems that have practical consequences for the parties. But we conclude that we are required to provide a written opinion on the question presented. *See* § 16-12-102(1), C.R.S.2006 ("The prosecution may appeal any decision of a court in a criminal case upon any question of law."); C.A.R. 4(b)(2) ("[W]hen an appeal by the state or the people is authorized by statute," the court of appeals, "after consideration of said appeal,

shall issue a written decision answering the issues in the case and shall not dismiss the appeal as without precedential value."); *People v. Jackson*, 972 P.2d 698, 700 (Colo.App. 1998) ("The language of C.A.R. 4(b)(2) is plain and unambiguous and dictates that if an appeal by the People is authorized by statute, this court must issue a written decision.").

The relevant facts are as follows.

Before sentencing, defense counsel stated that defendant needed to have surgery on his leg. Counsel said that defendant's doctor had performed two prior surgeries on the leg and had unique knowledge of defendant's medical condition. Counsel also said that, if the surgery were not performed soon, defendant would suffer irreparable harm and would be unable to walk. Counsel asked that the court allow defendant to undergo surgery by his own doctor and to recuperate at home before sentencing.

The prosecutor objected.

The court granted defendant's request. It noted that defendant was in the custody of the sheriff, and it ruled that it could "modify the terms and conditions of that custodial circumstance." The court ordered that defendant be delivered to his home twenty-four hours before his surgery, at which point he would be "basically under house arrest." The court indicated that jail staff would arrange to have defendant monitored while he was at home. The court noted that this arrangement would obviate the need for surgery performed at taxpayer expense. And, at the prosecutor's request, the court ordered that defendant would have no contact with any of the victims.

On appeal, the prosecution contends that the trial court lacked authority to release defendant pending sentencing because defendant had been convicted of sexual assault on a child. We recognize that the court had no authority to release defendant on bail pending sentencing. *See* Colo. Const. art. II, § 19(2.5)(a)(III); § 16–4–201.5(1)(c), C.R.S. 2006. And we agree that, if the court lacked authority to release defendant on bail, it also lacked authority to release defendant without requiring bail. But we do not agree that the arrangement here necessarily constituted a "release." On this record, we instead conclude that defendant remained in the custody of the sheriff.

The sheriff is the "keeper of the county jail." Section 17–26–102, C.R.S.2006. He or she must "receive and safely keep every person duly committed" and "shall not without lawful authority let out of such jail, on bail or otherwise, any such person." Section 17–26–103, C.R.S.2006. However, the sheriff may take a person out of jail for medical treatment. *See* § 17–26–104.5(1), C.R.S.2006 ("[T]he county jail may assess a reasonable medical treatment charge for each visit by a person in custody to an institutional or non-institutional physician ...."); § 17–26–104.5(1.5)(a), C.R.S.2006 ("If economical, a county sheriff may transport a person held in custody in a county jail to the Colorado mental health institute at Pueblo for medical treatment.").

Here, the sheriff took defendant out of jail for medical treatment. Instead of delivering defendant to the hospital, the sheriff delivered him to home detention twenty-four hours before surgery. Thereafter, defendant remained on home detention (subject to electronic monitoring as arranged by jail staff) during his recuperation. We conclude that, under the circumstances, defendant remained in the custody of the sheriff. *See* § 16–1–104(9), C.R.S.2006 (" 'Custody' means the restraint of a person's freedom in any significant way."). Had defendant left his home during the period of confinement, he could have been charged with escape or attempted escape from the sheriff's custody. *See* §§ 18–8–208, 18–8–208.1(6), C.R.S 2006; *People v. Lucero*, 654 P.2d 835, 836 (Colo.1982) (temporary release may constitute constructive custody under § 16–1–104(1) ); *cf. Weaver v. Commonwealth*, 156 S.W.3d 270 (Ky.2005) (because the defendant's home incarceration was not a constraint incidental to release on bail, his departure constituted an escape from "custody" as defined by statute).

We therefore conclude that the court's ruling did not run afoul of article II, § 19(2.5)(a)(III) or § 16–4–201.5(1)(c). In reaching this conclusion, we note several questions that are not at issue here:

1. Because the record contains no objection by the sheriff, we assume that the sheriff agreed to exercise custody and control over defendant as arranged. We therefore need not decide whether a trial court has authority to supervise or direct a sheriff's exercise of custody and control.

2. Because the prosecution did not challenge defense counsel's statements regarding defendant's condition (or the information contained in the doctor's letter that accompanied defendant's written motion), we assume that the surgery by defendant's physician, as well as the period of recuperation, were medically necessary. We therefore need not decide whether the arrangement comported with the sheriff's statutory obligation to "keep every person duly committed," under § 17–26–103.

3. We are not asked to decide whether the trial court's ruling was an abuse of discretion.

The judgment is affirmed, and the ruling is approved.

Judge DAILEY and Judge GRAHAM concur.