The PEOPLE of the State of Colorado, Petitioner,

v.

DISTRICT COURT, City and County of Denver, and One of the Judges Thereof, Honorable Morris B. Hoffman, Respondents.

No. 96SA468.

Supreme Court of Colorado, En Banc.

Feb. 24, 1997.

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coats, Chief Appellate Deputy District Attorney, Gerald J. Rafferty, Deputy District Attorney, Denver, for Petitioner.

James A. Castle, Shelley Gilman, Denver, for Defendant Isaac Alexander.

Philip A. Cherner, Jason C. Middleton, Denver, for Defendant Dwayne Wilson.

Chief Justice VOLLACK delivered the Opinion of the Court.

In this original proceeding, we directed the Denver District Court to show cause why its December 20, 1996, order directing disclosure of addresses and telephone numbers for witnesses who had been placed under witness protection should not be vacated. The prosecution contends that the district court's order should be vacated because the witnesses' right to personal safety in this case outweighs the defendants' right of confrontation. We agree and hold that, under the circumstances of this case, the district court abused

its discretion in ordering the prosecution to disclose the addresses and telephone numbers of witnesses under witness protection. We therefore make the rule to show cause absolute.

## I.

On November 7, 1996, the Denver Statutory Grand Jury returned a nineteen-count indictment against ten defendants. The indictment alleges that over a five-year period, the defendants, as members of the street gang known as "the Bloods," committed various violent crimes and engaged in the distribution of crack cocaine. Five of the defendants were charged with murder in the first degree. The indictment was brought, in large part, as a result of the cooperation and testimony of two witnesses who are former members of the Bloods.

On November 21, 1996, the Denver District Court ordered the prosecution to disclose the names and grand jury testimony of these two witnesses. In its order, the district court noted that it would not, at that time, order disclosure of the addresses and telephone numbers of the witnesses. The district court also noted that the prosecution was making "appropriate security arrangements" for the two witnesses.

On November 22, 1996, the prosecution sought a reconsideration of the district court's order requiring immediate disclosure of the identities and grand jury testimonies of the two witnesses. The district court granted the prosecution an opportunity to address the court *in camera* regarding the two witnesses' safety. According to the prosecution, it informed the district court during the *in camera* hearing that although the State was planning to move the two witnesses into witness protection, it had not done so yet. The prosecution also informed

the court that both witnesses had family members who would remain in the neighborhood in which the witnesses lived.[1] Additionally, according to the prosecution, it provided the court with examples of intimidation and death threats which had occurred since the grand jury returned the indictment against the defendants.[2]

On November 22, 1996, the district court amended its November 21, 1996, order by delaying disclosure of the witnesses' identities and their grand jury testimony transcripts until December 13, 1996. The court based its order on the fact that the defendants had no immediate need for the information and on "additional security concerns expressed by the [prosecution] at the [*in camera*] hearing." The State subsequently placed the witnesses under witness protection by moving them out of their old neighborhood and into a secret location. On December 13, 1996, the prosecution revealed to all defense counsel the witnesses' identities and the transcripts of their grand jury testimonies.

On December 20, 1996, the district court ordered the Denver District Court Probation Department to comply with a defense subpoena duces tecum for all files concerning these two witnesses. Thereafter, defense counsel argued for disclosure of the witnesses' current addresses and telephone numbers. In support, defense counsel argued that they were entitled to such information in order to investigate the witnesses' backgrounds. The prosecution countered that disclosure of the witnesses' current addresses and telephone numbers would jeopardize their safety and that the defense had no need for such information because the witnesses were available to the defense.[3] Nevertheless, the district court ordered the prosecution to disclose the current addresses and telephone numbers of the witnesses with

---

1. The witnesses associated with the defendants in this neighborhood. It is where many of the crimes set forth in the indictment allegedly occurred.

2. For example, the family of one witness had been threatened by one of the defendants' brothers shortly after the indictment was returned. The other witness had been paged daily with the numbers "187" in the pager's display window.

The prosecution explained that members of the Bloods believed that the numbers "187" refer to the statutory citation for homicide in the California penal code. The witness therefore considered the message to be a death threat.

3. The prosecution has made the witnesses available to defense counsel by arranging a meeting at a specified location.

the directive that disclosure be limited to defense counsel and their investigators.[4]

## II.

■ Under both the United States Constitution and the Colorado Constitution, the accused in a criminal prosecution is guaranteed the right to confront the witnesses against him. U.S. Const. amend. VI; Colo. Const. art. II, § 16. The right of confrontation includes the right of cross-examination. *See Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965); *People v. Thurman,* 787 P.2d 646, 651 (Colo. 1990). According to the United States Supreme Court in *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), a permissible purpose of cross-examination is to identify the witness with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood. *Id.* at 691, 51 S.Ct. at 219. Another purpose of cross-examination is to allow the jury to interpret the witness' testimony in a light reflected by knowledge of his environment. *See id.* Finally, during cross-examination, facts may be brought out tending to discredit the witness by showing that his testimony is untrue or biased. *See id.* at 692, 51 S.Ct. at 219.

■ Generally, the rule is that a defendant's right to obtain a witness' address is in aid of the defendant's right of confrontation. *See People ex rel. Dunbar v. District Court,* 177 Colo. 429, 432, 494 P.2d 841, 843 (1972). The defendant's right of confrontation, however, is not without limitations. *See id.* In *Dunbar,* this court first recognized a personal safety exception to the accused's right of confrontation. *Id.* We held in *Dunbar* that once a witness has made a showing that his safety would be endangered if he discloses his residence, then the defendant has a duty to show some materiality in questioning the witness as to his residence. *Id.* at 433, 494

P.2d at 844. Thus, in determining whether the witness must disclose his address, the trial court must balance the witness' right to personal safety against the defendant's right of confrontation. *See id.* at 434, 494 P.2d at 844.[5]

■ In *Thurman,* 787 P.2d 646, we discussed the showing a witness must make in order to assert the personal safety exception to the defendant's right of confrontation. We stated:

Ideally, the witness or the prosecution will provide the trial court, outside the presence of the jury, with a factual basis for the witness'[ ] apprehension, such as evidence of an actual threat to the witness. At minimum, however, "the danger claimed by the witness must in some way relate to the defendant. There must be a nexus such that the witness legitimately fears reprisal from the defendant or his associates."

*Id.* at 654 (quoting *Dunbar,* 177 Colo. at 433, 494 P.2d at 843) (citations omitted). A witness' assertion of concern for personal safety does not have a talismanic quality automatically giving the witness the right to withhold information about identity, address, and place of employment. *See Thurman,* 787 P.2d at 653. Rather, the proper resolution of such issues requires careful attention to the facts of each case and application of the law concerning the right of an accused to confront adverse witnesses. *See id.*

■ When the witness has expressed apprehension regarding his or her safety, the key consideration for a trial court in assessing a defendant's constitutional claim to a witness' identity, address, or place of employment is whether in absence of that information the defendant will have sufficient "opportunity to place the witness in his proper setting."

*Thurman,* 787 P.2d at 654 (citing *Smith v. Illinois,* 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968) (quoting *Alford,* 282

4. The district court also ordered the prosecution to disclose the transcript of the November 22, 1996, *in camera* hearing. The prosecution, however, has not yet produced this transcript.

5. The *Dunbar* balancing test has been codified in Crim. P. 16(I)(d)(2), which provides:

The court may deny disclosure authorized by this section if it finds that there is substantial risk to any person of physical harm, intimidation, bribery, economic reprisals, or unnecessary annoyance or embarrassment, resulting from such disclosure, which outweighs any usefulness of the disclosure to defense counsel.

U.S. at 692, 51 S.Ct. at 219)). Determining the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. *See Alford,* 282 U.S. at 694, 51 S.Ct. at 220; *Thurman,* 787 P.2d at 655. A reviewing court called upon to address a matter within the sound discretion of the trial court will not reverse the trial court's ruling unless it constitutes a clear abuse of discretion. *See Thurman,* 787 P.2d at 655.

In *Thurman,* we held that the trial court did not abuse its discretion in ordering a prosecution witness to disclose her address and place of employment. *Id.* We found it significant that the witness had received no actual threats, and that there were no rumors of threats. *Id.* Instead, the witness' fears were based on the fact that the defendant had a history of criminal conduct, including arrests for assault, but no convictions. *Id.* We also noted that it was important for the defendant to interview the witness' neighbors and co-workers regarding her reputation for truth and credibility. *Id.* We therefore affirmed the trial court's disclosure order because there was no actual threat made against the witness and because the defendant needed the sought-after information in order to place the witness in her proper setting. *Id.*

■ In the case at bar,[6] the district court ordered the prosecution to disclose the current addresses and telephone numbers of the two grand jury witnesses. The defendants assert that they have a right to obtain such information as part of their constitutional right of confrontation because it is necessary to place the witnesses in their proper setting. The prosecution counters that in this case, the witnesses' right to personal safety outweighs the defendants' right to obtain the information. We agree with the prosecution.

In weighing the respective rights of the parties in this case, we first address the defendants' constitutional right of confrontation. We acknowledge that the defendants have a right to obtain information for purposes of cross-examination that would place the witnesses in their proper setting. However, in this case, the defendants do not need the witnesses' current addresses and telephone numbers to do so. Defendants already have the witnesses' former addresses and telephone numbers, as well as substantial background information and criminal history contained in the witnesses' files maintained by the Denver District Court Probation Department. This information is more likely to place the witnesses in their proper setting because the witnesses' former neighbors are more likely than their current neighbors to provide testimony regarding the witnesses' reputation for veracity in their neighborhood. *See Alford,* 282 U.S. at 691, 51 S.Ct. at 219. Similarly, knowledge of the witnesses' former addresses is more likely than their new addresses to help the jury interpret the witnesses' testimony in a light reflected by knowledge of the witnesses' environment. *See id.*

We next address the witnesses' right to personal safety. During the *in camera* hearing of November 22, 1996, the prosecution made a showing to the district court that the witnesses' safety would be endangered if their identities and grand jury testimony were revealed before the State placed them in witness protection. Specifically, the prosecution asserted that the witnesses had received threats after the indictment was entered against the defendants. The danger claimed by the witnesses related to the defendants, and the witnesses feared reprisal from the defendants or their associates.[7] The district court subsequently delayed its order for the disclosure of the witnesses' identities and grand jury testimonies until December 13, 1996, stating that its amended order was based in part on the witnesses'

---

6. We assume as true the statements of fact about which the prosecution advised the district court in the *in camera* hearing held on November 22, 1996. We note that the only order challenged in this original proceeding is the December 20, 1996, order by the district court ordering the prosecution to disclose the current addresses and telephone numbers of the two grand jury witnesses who have been placed under protection.

7. Contrary to the defendants' argument, the threat to the witnesses' safety need not come from each specific defendant in this case because it involves organized criminal activity in the form of a street gang. Here, the witnesses testified against the defendants as members of a street gang. The threat of reprisal thus comes from the defendants and/or their associates as members of

safety concerns. Thus, it appears that the district court concluded that there was a factual basis for the witnesses' safety concerns by ruling, in part, that the witnesses' safety would be endangered if their identities were known before they were moved to witness protection.

In weighing the defendants' right of confrontation against the witnesses' right to personal safety, we conclude that the witnesses' safety in this case outweighs the defendants' confrontation right. Here, the threat to the witnesses' safety is emphasized by the fact that the State found it necessary to place them under witness protection and the district court found it necessary to delay disclosure of the witnesses' identities until they had been placed under witness protection. Moreover, it is important in this case that the defendants' right of confrontation has been accommodated because the prosecution has made the witnesses' former addresses and telephone numbers available to the defendants, thereby making the witnesses' current addresses and telephone numbers unnecessary. *See United States v. Baker*, 419 F.2d 83 (2d Cir.1969) (holding that trial court did not abuse its discretion in upholding witness' refusal to disclose place of employment, noting that defendant had obtained information regarding witness' background that enabled defense counsel to cross-examine witness fully and effectively without the employment information); *People v. Turley*, 870 P.2d 498 (Colo.App.1993) (holding that trial court did not abuse its discretion in refusing to require disclosure of witness' address because personal safety exception applied, noting that defendant knew victim's prior address thereby limiting value of victim's most current address).

Because we hold that the witnesses' right to personal safety in this case outweighs the defendants' right of confrontation, we conclude that the district court abused its discretion in this case by ordering disclosure of the witnesses' current addresses and telephone numbers. The district court's disclosure order ignores the safety concerns articulated by the prosecution which the court itself acknowledged in its order delaying disclosure of the witnesses' identities. Furthermore,

the disclosure order defeats the purpose of placing the witnesses under witness protection, which is designed to protect the safety of prosecution witnesses by making their location unknown. *See United States v. Watson*, 599 F.2d 1149 (2d Cir.) (holding that trial court properly barred certain questions about witness who was in Federal Witness Protection Program), *modified*, 690 F.2d 15 (2d Cir.1979); *United States v. Rangel*, 534 F.2d 147 (9th Cir.) (holding that witness whose life had been threatened, forcing him to relocate, was not required to disclose true name, address, or telephone number).

### III.

In balancing the witnesses' right to personal safety against the defendants' right of confrontation, we hold that the district court abused its discretion in ordering the disclosure of the current addresses and telephone numbers of the witnesses in this case. We therefore make the rule to show cause absolute and direct the district court to vacate its order requiring disclosure of such information.

the street gang, not necessarily as individual de-

fendants.