In re The PEOPLE of the State
of Colorado, Plaintiff

v.

Robert Keith RAY, Defendant.

No. 10SA341.

Supreme Court of Colorado,
En Banc.

April 25, 2011.

As Modified on Denial of Rehearing
June 20, 2011.

Carol Chambers, District Attorney, Eighteenth Judicial District, Ann B. Tomsic, Chief Deputy District Attorney, Centennial, Colorado, Attorneys for Plaintiff.

Collins, Liu & Assoc., L.L.P., Maria Liu, Greeley, Colorado, Mulligan & Mulligan, PLLC, Mary Clair Mulligan, Boulder, Colorado, Gehring Law Firm, Ltd., Christopher H. Gehring, Denver, Colorado, Attorneys for Defendant.

John W. Suthers, Attorney General, Paul Koehler, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Amicus Curiae Attorney General John Suthers.

Chief Justice BENDER delivered the Opinion of the Court.

## I.

In this original proceeding pursuant to C.A.R. 21, we consider whether the trial court struck the correct balance between, on the one hand, the defendant's right to discovery of key prosecution witnesses' addresses during post-conviction proceedings after the imposition of the death penalty, and, on the other hand, an extraordinary threat to witness safety in light of the fact that the defendant was sentenced to death for murdering a witness in a previous case. The prosecution petitioned for relief from the trial court's order that lifted a protective order and required the prosecution to disclose to Robert Ray's post-conviction counsel the addresses of thirteen witnesses, eight of whom are in the witness protection program. We issued a rule to show cause why the trial court's order should not be vacated.

Here, the trial court found that the prosecution demonstrated an extraordinary and compelling threat to witness safety based on Ray and his associates' murder of a key prosecution witness in a previous case, their threats to witnesses in this case, their culture of retaliation, and the possibility of their orchestrating retaliation from prison. Conversely, post-conviction counsel made a minimal showing of why the witnesses' addresses are material to post-conviction proceedings. Given the unique factual circumstances of

this case, where Ray killed both a prosecution witness and an innocent bystander, we hold that post-conviction counsel's minimal showing of materiality did not overcome the prosecution's showing of an extraordinary and compelling threat. The trial court abused its discretion by lifting the protective order and requiring the disclosure of the witnesses' addresses. Hence, we now make the rule absolute and remand this case to the trial court for proceedings consistent with this opinion.

## II.

The trial court ruling at issue in this original proceeding arises out of post-conviction proceedings concerning the imposition of the death sentence for Robert Ray, a drug dealer with connections to a street gang. Ray was convicted of first degree murder for killing Javad Marshall–Fields, a key prosecution witness, and his fiancée Vivian Wolfe. Marshall–Fields became a prosecution witness because he was a shooting victim of Ray's and a witness to the murder of Gregory Vann by Sir Mario Owens at Lowry Park in Aurora.

Owens shot and killed Vann as he tried to break up a fight during a free picnic and rap music contest that Vann had helped organize at Lowry Park. To facilitate Owens's escape, Ray shot Elvin Bell (Vann's brother) five times and Marshall–Fields twice. Both Bell and Marshall–Fields survived. Ray was initially charged with accessory to murder.[1]

Leading up to Ray's Lowry Park trial, Ray's trial counsel provided him with discovery, from which Ray and Owens were able to discern the key prosecution witnesses against them, including Marshall–Fields and Askari Martin.[2] On several occasions, Ray offered Jamar Johnson $10,000 to kill Marshall–Fields and initially asked him to kill Martin. During a pretrial hearing for which Marshall–Fields and Martin were subpoenaed, Ray made a comment in a court-house elevator that snitches should die and that Martin

---

1. For the Lowry Park shootings, Ray was eventually convicted of accessory to murder, two counts of attempted first degree murder, and two counts of first degree assault. Owens was convicted of first degree murder.

2. The address listed for Marshall–Fields in discovery was not his current address.

would be dead before he testified. Even though Martin was unaware of these comments, he was so fearful that he failed to appear at the next court date, despite being under subpoena. After Martin failed to appear, Ray continued to ask Johnson to kill Marshall–Fields, but no longer requested that he kill Martin. Ray and his associates also conducted surveillance of Marshall–Fields, made a number of threats against him, and offered him money not to testify.

One week before Ray's accessory to murder trial was scheduled to begin, Owens and an associate, Perish Carter, pulled alongside Marshall–Fields and Wolfe's vehicle and Owens opened fire, killing both. Ray, who was out on bond, was not present at the shooting but instead went to a liquor store in order to create a video alibi by appearing in surveillance footage.[3]

Based on the difficulties law enforcement faced getting witnesses to cooperate due to fears of reprisal, the prosecution empanelled a special grand jury to compel witness testimony. The grand jury indicted Ray, Owens, and Carter. The prosecution placed a large number of witnesses into witness protection and relocated some out of state. For the other witnesses who did not wish to be placed in witness protection but were still fearful for their lives, the prosecution promised to keep their addresses from defense counsel and the defendants to secure their cooperation. The trial court issued protective orders preventing the disclosure of these witnesses' addresses. Prior to trial, the trial court created a procedure whereby defense counsel could call witnesses from the prosecution's office, without learning their phone numbers, to determine if they were willing to be interviewed.

A jury convicted Ray of, among other things, two counts of first degree murder for the killings of Marshall–Fields and Wolfe, conspiracy to commit first degree murder, solicitation to commit murder, intimidating a witness, and bribery of a witness. The jury returned a death sentence after finding several aggravating factors, including that Ray committed the murders to avoid prosecution.[4]

The trial court appointed post-conviction counsel in accordance with Colorado's statute providing for unitary review in death penalty cases. § 16–12–201 to –210, C.R.S. (2010). The trial court issued a minute order requiring the prosecution to provide the court and post-conviction counsel with a list of witnesses currently in the witness protection program, subject to a protective order that the list and any witnesses' addresses could not be shared with Ray or his family.

The prosecution filed a motion asking the court to extend to post-conviction proceedings all existing protective orders for eighteen witnesses enrolled in the witness protection program and for nine witnesses not enrolled in the witness protection program.[5] The prosecution also asked the court to prohibit post-conviction counsel from determining the locations of these witnesses through independent investigation.

The trial court held six days of hearings to consider the prosecution's motion to continue the trial court's protective order. The trial court asked the prosecution to telephone the witnesses who were the subject of their motion, with post-conviction counsel present, to determine whether they were willing to speak with post-conviction counsel or to have their addresses disclosed. The prosecution did not contact either victims or victim family members. All of the witnesses at issue in this original proceeding who the prosecution

---

3. The procedural posture in which we decide this original proceeding is unique, given that this court does not have the trial records and that Ray's convictions have not yet been affirmed on appeal. Therefore, our recitation of the facts, for both the Lowry Park shootings and the killings of Marshall-Fields and Wolfe, is taken from the prosecution, the prevailing party at trial, and is for purposes of this original proceeding only. It is not a binding factual determination for purposes of appellate review.

4. Owens and Carter were tried separately. A jury convicted Owens of first degree murder and intimidating a witness, and it sentenced him to death. A jury convicted Carter of conspiracy to commit first degree murder and intimidating a witness.

5. For purposes of this original proceeding, we accept as true the prosecution's claims as to which witnesses are in the witness protection program.

was able to contact indicated that they did not wish to speak with post-conviction counsel. Some of these witnesses vehemently objected, while others were more equivocal, indicating that they might be willing to talk with post-conviction counsel at a later date.[6]

Many of these witnesses have previously testified, in some instances, numerous times. For example, some have testified before the grand jury, at preliminary hearings, and at all three trials for Ray, Owens, and Carter. The prosecution has also given post-conviction counsel the updated criminal histories for each witness.

At the onset of the hearings the trial court announced a framework in which it would decide whether to disclose the witnesses' addresses. The trial court required the prosecution to demonstrate an extraordinary or compelling threat to witness safety, in order to justify non-disclosure. The trial court then balanced this risk against the materiality of the witnesses' current addresses to post-conviction counsel. The court derived this approach by adhering to two of our cases: *People v. Rodriguez*, 786 P.2d 1079 (Colo.1989) (holding that the prosecution was required to demonstrate extraordinary or compelling circumstances to prevent the defendant's discovery of information that was possibly exculpatory, but not constitutionally material, during post-conviction review of a death sentence); and *People v. District Court*, 933 P.2d 22 (Colo.1997) (balancing the defendant's confrontation rights to know witnesses' addresses against witness safety).

Some evidence presented at the hearing, while contested, indicated that Ray, Owens, and their family members threatened witnesses, before they were charged with killing Marshall–Fields and Wolfe, throughout their trials, and after their convictions. By way of example, some evidence consisted of the following: (1) Ray and Owens wore T-shirts that said "stop snitching" (possibly before and after killing Marshall–Fields and Wolfe); (2) Marlena Taylor, who was a prosecution

witness because she unwittingly came into possession of the guns believed to have been used in the murders that were in her boyfriend's car, received frightening phone calls from unidentified men asking her to give them the guns (Taylor is currently in the witness protection program and is subject to the court's disclosure order); and (3) Ray, who believed that his sister-in-law Brandi Taylor was calling him a murderer, stated to his brother during a recorded phone call, that "bitch [is] running her mouth too much" (Taylor is currently in the witness protection program and is subject to the court's disclosure order).

The trial court took judicial notice of Ray's and Owens's trials and found that the "actions of both men are attributable to each another." The trial court found record support that Ray and Owens made the following threats to witnesses after they were charged with the killings: (1) Owens made a gesture of a gun to a jail-house witness while he testified at a motions hearing (this witness has since given permission to be contacted); (2) Owens was convicted of witness intimidation for telling Cashmier Jones to change her grand jury testimony (Jones is currently in the witness protection program and subject to the court's disclosure order); and (3) Ray threatened a witness, while they were both incarcerated, after Ray's conviction for killing Marshall-Fields and Wolfe (this witness has since given permission to be contacted). The trial court found that although Ray and Owens are not allowed to communicate because both are inmates at the Colorado State Penitentiary, they have attempted to communicate with each other by telephone through the assistance of family members. The trial court further found that Ray comes from a family with a "criminal mindset" based, in part, on evidence that members of his family attempted to conceal evidence and that Ray's wife, Latoya Sailor-Ray, confronted and threatened Anetta Vann, the mother

6. Four witnesses have agreed to speak with and to disclose their addresses to Ray's post-conviction counsel. Specifically, counsel for Davinia Ray (Ray's sister-in-law) testified that Ms. Ray is willing to be contacted by Ray's post-conviction counsel. Post-conviction counsel submitted affidavits of three incarcerated witnesses in the witness protection program that have met with post-conviction counsel and are willing to disclose their locations. These four witnesses are not at issue in this original proceeding.

of the two of the shooting victims of Lowry Park, Vann and Bell.

These findings led the trial court to conclude that the killings of Marshall–Fields and Wolfe were an "attack on the criminal justice system"; Ray and Owens have advocated a "culture of retaliation against people who cooperated in criminal investigations"; they are "still inclined to work in concert with each other"; and there is a possibility that they could orchestrate retaliation from prison. Hence, the trial court held that the prosecution demonstrated an extraordinary and compelling threat to witness safety, based on Ray's and Owens's intimidating behavior before and after their convictions.

In an effort to establish the materiality of each prosecution witness and post-conviction counsel's need to contact them, post-conviction counsel framed their arguments in terms of the witnesses' materiality to the prosecution's case on the merits. Post-conviction counsel argued that they need the witnesses' addresses in order to: (1) re-interview witnesses to determine whether trial counsel was ineffective by failing to properly interview the witnesses in the first place or to discover impeachment or mitigating evidence, and (2) discover and interview current neighbors with previously unknown impeachment evidence or knowledge of the witnesses' veracity for the truth.

In making its balancing determination, the trial court again looked at witness safety, as to each witness, despite having found extraordinary and compelling circumstances overall. The court balanced the previous and existing threats toward each witness against the materiality of each witness to the prosecution's case on the merits, or the possibility of discovering new impeachment or mitigating evidence.

The trial court lifted the protective order for thirteen witnesses, including eight witnesses in the witness protection program, and ordered the disclosure of their addresses to post-conviction counsel. For the witnesses whose addresses the prosecution knew, the trial court determined to send a letter, copied to post-conviction counsel, stating that it ordered their addresses disclosed to post-conviction counsel, but that they were

free to decline to speak with either side. The proposed letter stated that the trial court entered the order over the prosecution's objection and that the court knew that the disclosure of each witness's address to post-conviction counsel was contrary to the witnesses' wishes. For the few witnesses whose addresses the prosecution did not know, post-conviction counsel would be allowed to contact their family members or independently investigate their whereabouts. The trial court directed post-conviction counsel not to contact any witnesses until after it mailed the court's proposed letter and not to share the witnesses' information with Ray or anyone outside of Ray's defense team, including Owens's defense team. The trial court delayed sending the letter until after we decided this original proceeding.

The trial court also ruled that post-conviction counsel may contact the attorneys of any witnesses who were represented to determine if they were willing to be interviewed. The trial court continued the protective order for all victim family members to avoid unnecessary annoyance, with the exception of Bell, who was the brother of Vann and one of Ray's victims at Lowry Park.

The prosecution now seeks relief pursuant to C.A.R. 21 from this order. Because we agree with the prosecution that the trial court abused its discretion by lifting the protective order and requiring the disclosure of the witnesses' addresses, we now make the rule absolute.

## III.

■■■ We first address whether an original proceeding is the proper method to review the trial court order challenged by the prosecution. This court may exercise original jurisdiction under C.A.R. 21 where a trial court proceeds without or in excess of its jurisdiction or to review a serious abuse of trial court discretion, and where an appeal would not be an adequate remedy. *People v. Vlassis*, 247 P.3d 196, 197 (Colo.2011). Here, the prosecution cannot seek an interlocutory appeal of the trial court disclosure order, *see* C.A.R. 4.1(a), nor does the trial court order constitute a final judgment that the prosecu-

tion can appeal, *see* C.A.R. 1(a)(1). Appellate review after the conclusion of post-conviction proceedings would be an inadequate remedy because, by then, the protected witnesses' addresses would already have been disclosed and the witnesses' safety would be placed at risk. Under these circumstances, we conclude that it is appropriate to exercise our original jurisdiction.

## IV.

Next, we turn to whether the trial court correctly balanced the threat to witness safety against the materiality of the witnesses' addresses to post-conviction proceedings. This court has not previously considered the situation where the defendant asserts during post-conviction review of a death sentence the right to discover the addresses of witnesses who are the subject of a protective order.

■ In all "criminal prosecutions," the accused has the right to confront the witnesses against him. U.S. Const. amend. VI; Colo. Const. art. II, § 16. Generally speaking, there are two protections afforded by the Confrontation Clause. First, the Confrontation Clause provides the right to confront one's accusers face-to-face. *Coy v. Iowa,* 487 U.S. 1012, 1019–20, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Second, the Confrontation Clause guarantees "an *opportunity* for effective cross-examination." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Cross-examination allows the accused to identify the witness in his community so that independent testimony of his reputation for veracity in his own neighborhood can be sought and offered. *People v. Dist. Court,* 933 P.2d at 25 (citing *Alford v. United States,* 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624 (1931)). Other purposes of cross-examination are testing the witness's knowledge and exposing whether

the witness's testimony is biased or untrue.[7] *Id.*

■ To aid the defendant's right of confrontation, an accused generally has the right to know a witness's identity and address. *Id.; Smith v. Illinois,* 390 U.S. 129, 131–32, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Alford,* 282 U.S. at 693–94, 51 S.Ct. 218. Also as the general rule, both the prosecution and defense have an equal right to interview witnesses because they do not "belong" to either party. *See, e.g., United States v. Slough,* 669 F.Supp.2d 51, 56 (D.D.C.2009); *see also* Crim. P. 16, Part III(a); Colo. Bar Ass'n, Ethics Op. 65: Guidelines for Opposing Counsel Contacting Witnesses (March 17, 1984). At the same time, prospective witnesses may freely decline to submit to a pretrial interview with either the prosecution or defense. *People v. Melanson,* 937 P.2d 826, 837 (Colo.App.1996); Ethics Op. 65.

■ The right to know a witness's identity and address is not absolute. Colorado recognizes a "personal safety" exception to the accused's confrontation right to know a witness's identity and address. *People v. Dist. Court,* 933 P.2d at 25. This court has only considered the personal safety exception during the pre-trial or trial phase. *Id.* (after grand jury indictment); *People v. Thurman,* 787 P.2d 646 (Colo.1990) (following dismissal of an indictment); *People ex rel. Dunbar v. Dist. Court,* 177 Colo. 429, 494 P.2d 841 (1972) (same).

■ The personal safety exception requires the prosecution to demonstrate that the witness's safety would be endangered by disclosure and that, at a minimum, there is a nexus between the defendant and the perceived danger. *People v. Dist. Court,* 933 P.2d at 25. The defendant must then show that the witness's address and information has "some materiality." *Id.* In another case, we stated that the defense must show that

---

**7.** The right to confrontation is considered "a *trial* right." *Pennsylvania v. Ritchie,* 480 U.S. 39, 52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion). Some federal and state courts have concluded that a defendant's confrontation rights do not apply during post-conviction proceedings because they occur after the "criminal prosecution" has concluded. *See, e.g., Oken v. Warden,*

*MSP,* 233 F.3d 86, 91 (1st Cir.2000) (holding that defendant did not have the right to be physically present or testify in person during state post-conviction proceedings). However, the prosecution does not argue that a defendant has no confrontation rights during post-conviction proceedings, and we do not address this issue.

the witness is a "material witness on the issue of guilt." *Thurman*, 787 P.2d at 654. Finally, the court must balance the threat to witness safety against the materiality of the witness's address and information. *People v. Dist. Court*, 933 P.2d at 25. When making this determination, a key consideration for the trial court is whether the defendant will have sufficient "opportunity to place the witness in his proper setting" without learning his address. *Id.* (quoting *Thurman*, 787 P.2d at 654). We review the decision whether to order the disclosure of witnesses' addresses for abuse of discretion. *Thurman*, 787 P.2d at 655.

In *District Court*, this court held that it was an abuse of discretion for the trial court to order the disclosure of the current addresses and phone numbers of two witnesses in the witness protection program to defense counsel. 933 P.2d at 27. There, a grand jury indicted ten members of a street gang for various crimes, including murder. *Id.* at 24. The defendants and their family members intimidated and made death threats to two key grand jury witnesses after the grand jury indictments, and the prosecution placed them into the witness protection program. *Id.* The prosecution made these witnesses available to defense counsel for interviews, and the prosecution had already disclosed the witnesses' former addresses and telephone numbers and criminal histories to defense counsel. *Id.* at 24, 26. Nonetheless, prior to trial, the court ordered the disclosure to defense counsel of these witnesses' current addresses and telephone numbers. *Id.* at 24–25. We reversed. We held that the witnesses' rights to personal safety trumped the defendants' confrontation rights. *Id.* at 27. We reasoned that the witnesses were in the witness protection program, and subject to death threats, and the witnesses' former addresses and neighbors were more likely to place the witnesses in their proper setting than their new addresses and neighbors. *Id.* at 26. Hence, we prohibited the disclosure of these witnesses' addresses, even to defense counsel. *Id.* at 27.

■ The framework of these personal safety cases has continuing applicability in the context of post-conviction review of a death sentence. A defendant who has been sentenced to death may assert the need to obtain witnesses' addresses during post-conviction proceedings. The role of post-conviction counsel is, however, slightly different than that of trial counsel. Death is a uniquely severe and irrevocable penalty, which requires the utmost scrutiny to the underlying verdict and sentence. *See, e.g., People v. Young*, 814 P.2d 834, 843 (Colo.1991). Post-conviction counsel in a death penalty case must "continue an aggressive investigation of all aspects of the case". ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases § 10.15.1(E)(4) (2003). Post-conviction counsel cannot rely on the record because: (1) trial counsel may not have conducted an adequate investigation; (2) the prosecution may have concealed evidence; (3) witnesses may have falsely testified; (4) and the forensic evidence may have been inadequate. *Id.* cmt. B at 133–34. Therefore, post-conviction counsel must reinvestigate the facts underlying the conviction and sentence, the mitigating evidence, and trial counsel's performance. *Id.* at 134.

■ When deciding whether to disclose witnesses' addresses to post-conviction counsel, the trial court must balance the threat to witness safety against any demonstrated materiality to post-conviction counsel of learning the trial witnesses' addresses. Each case must be reviewed upon the specific facts and circumstances presented. Ultimately, post-conviction counsel's showing of the materiality of each trial witness's address to post-conviction proceedings must be sufficient to overcome the prosecution's demonstrated threat to witness personal safety. We review the decision whether to order the disclosure of witnesses' addresses for abuse of discretion.

### V.

■ Given the uniquely alarming circumstances of this case, where Ray killed both a prosecution witness and an innocent bystander, we hold that the trial court abused its discretion by ordering disclosure of the witnesses' addresses upon a minimal showing of materiality. Here, the trial court found that

the prosecution demonstrated an extraordinary and compelling threat to witness safety. In making this determination, the court found that Ray and Owens advocated a culture of retaliation; they continue to work in concert and have attempted to use their family members to do so; and there is a viable possibility that they could orchestrate retaliation from prison. This is in addition to the murder of a key prosecution witness in what the trial court termed "an attack on the criminal justice system."

The trial court failed to give sufficient weight to the specific extraordinary and compelling threat to all of the prosecution witnesses when it made its balancing determination. It required the prosecution to demonstrate currently-existing threats toward each witness in order to prevent their disclosure, despite finding that there existed an extraordinary and compelling threat to witness safety. The trial court failed to credit the alarming fact that Ray had already killed a witness. This coupled with Ray's general threats to witnesses created a unique, extraordinary threat and risk to witness safety.

Post-conviction counsel failed to establish sufficiently the need for these protected witnesses' addresses to overcome the serious and substantial threat to the safety of the prosecution's witnesses. Most, if not all, protected witnesses in this case have already testified and have been cross-examined on numerous occasions—in some instances, before the grand jury, at preliminary hearings, and at all three trials for Ray, Owens, and Carter. Some of the factors that we found sufficient to protect the defendants' confrontation rights in *District Court* are present here. The prosecution provided the witnesses' updated criminal histories to Ray's post-conviction counsel. Ray's post-conviction counsel may contact the witnesses through the prosecution to obtain interviews. It is unlikely, however, that the witnesses will agree to be interviewed, considering that each of the witnesses at issue in this case have expressed a continuing, emphatic desire to keep their addresses protected from any member of the defendants' teams, and they have refused to talk with post-conviction counsel. It is also unlikely the current neighbors of these witnesses could place them in their proper setting or provide impeachment evidence in such a way that would demonstrate that trial counsel failed to discover impeachment testimony, and post-conviction counsel presented no evidence that current neighbors will be able to provide previously unavailable evidence. Given these circumstances, post-conviction counsel have a diminished need to place the witnesses in their current setting or seek testimony of their reputations for veracity in their current neighborhoods.

The facts of this case are even more egregious than those that existed in *District Court*, where we prohibited the disclosure of witnesses' addresses to defense counsel. There, the defendants and their family members threatened witnesses in the witness protection program. In contrast here, Ray not only made threats to harm prosecution witnesses, but he also acted upon these general threats by killing a witness and an innocent bystander. The nature of the threat to witnesses is of the highest order. We note that the danger of inadvertent disclosure increases with each person who has access to the witnesses' addresses. Therefore we conclude, as we did in *District Court*, that it is not appropriate to disclose these witnesses' addresses to post-conviction counsel.

Given the unique factual circumstances of this case, where Ray killed a prosecution witness and an innocent bystander, we hold that post-conviction counsel's minimal showing of materiality did not overcome the prosecution's showing of an extraordinary and compelling threat to witness safety. Therefore, the trial court abused its discretion by lifting the protective order and requiring the disclosure of the witnesses' addresses.

## VI.

For the reasons stated above, we make the rule to show cause absolute and remand the case to the trial court for proceedings consistent with this opinion.

Justice COATS concurs in part and dissents in part, and Justice RICE and Justice EID join in the concurrence and dissent.

Justice COATS, concurring in part and dissenting in part.

Because I agree that the defendant would not be entitled to the addresses he seeks, even if they were the addresses of prosecution witnesses being offered against him at trial, I concur in the majority's conclusion that the trial court abused its discretion in dissolving its protective order. For that very reason, however, I consider wholly gratuitous, and I therefore decline to join, the majority's dicta concerning the scope of a capital defendant's right to discovery in post-conviction proceedings.

We have previously held that notwithstanding a criminal defendant's constitutional right to confront the witnesses presented against him at trial, his right to discover their addresses must be tempered by consideration for their safety. *See People v. Dist. Court,* 933 P.2d 22, 25 (Colo.1997); *People v. Thurman,* 787 P.2d 646, 653 (Colo.1990); *People ex rel. Dunbar v. Dist. Court,* 177 Colo. 429, 432, 494 P.2d 841, 843 (1972). Although placing a witness in his surroundings is long-acknowledged to be of some significance for cross-examination, a witness's address is not inherently exculpatory, and its materiality, or relevance, under the circumstances of any particular case must therefore be weighed against the grounds for anticipating that disclosure will endanger his safety. We have found a defendant entitled to witness addresses on the basis of such a balancing, however, only against the backdrop of an existing constitutional right to the confrontation of adverse witnesses. *See Thurman,* 787 P.2d at 655.

Today, this court is faced with a vastly different problem, involving a defendant's demand for addresses, not in furtherance of confronting the witnesses being offered against him but as an aid to the development of a case of his own. In the context of a defendant's right to exercise subpoena powers, we have previously, and quite recently, made clear that there is no general constitutional right to discovery in a criminal case and, more specifically, that the right to confrontation is a trial right—not a constitutionally compelled rule of pre-trial discovery. *See People v. Baltazar,* 241 P.3d 941, 943–44

(Colo.2010); *People v. Spykstra,* 234 P.3d 662, 670 (Colo.2010). As the majority notes, various federal courts have found criminal defendants in post-conviction proceedings not even constitutionally entitled to be present and personally confront the witnesses against them. *See Oken v. Warden, MSP,* 233 F.3d 86, 92 (1st Cir.2000) (collecting authorities). As the majority also acknowledges, however, under the circumstances of this case we need not, and expressly do not, address the applicability of the defendant's constitutional right to confront. Maj. op. at 1048 n.7.

The majority disapproves of the trial court's order under the facts of this case, where the defendant has been convicted of the capital murder of one witness, shooting another witness five times, and threatening still others not to testify, simply because he has not demonstrated sufficient need to overcome the threat to witness safety and satisfy the balancing test of our Sixth Amendment confrontation jurisprudence. Where the balance of need and danger could not support disclosure under this standard, it is not only unnecessary to determine whether the defendant's constitutional right of confrontation is applicable to post-conviction proceedings. Unless the defendant could be entitled to an even more favorable standard for disclosure, which neither the majority nor the defendant suggests to be the case, it is also unnecessary to decide precisely what standard should apply. The salient point is that the defendant cannot be entitled to disclosure under these circumstances, even if he in fact has a constitutional right to confront. Without any explanation or attempt at justification, however, the majority simply announces that "[t]he framework of these personal safety cases has continuing applicability in the context of post-conviction review of a death sentence." Maj. op. at 1049.

Were the prosecution in possession of constitutionally material exculpatory evidence, it would of course be obligated to disclose that evidence to the defense. *See People v. Rodriguez,* 786 P.2d 1079, 1081–82 (Colo.1989); *cf.* Crim. P. 16(I)(a)(2); 32.1(d)(5). And unless the prosecution could demonstrate a compelling interest in non-disclosure, it would be obligated to disclose even constitu-

tionally *immaterial* exculpatory evidence. *See Rodriguez,* 786 P.2d at 1082. However, no one suggests that the witness addresses demanded here are themselves exculpatory. Similarly, although the criminal rules in this jurisdiction permit discretionary orders of disclosure where reasonable, even assuming those provisions apply with equal force to capital post-conviction proceedings, *see* Crim. P. 32.2(b)(3)(III), they authorize non-disclosure for reasons other than the risk of physical harm, including such things as the risk of intimidation, bribery, economic reprisals, or even unnecessary annoyance or embarrassment. *See* Crim. P. 16(I)(d)(2). The majority, however, offers no justification, constitutional or otherwise, for its capital-post-conviction-proceedings-personal-safety balancing test.

Because the majority concludes that the defendant would not be entitled to the addresses in question, even if the Confrontation Clause were to extend to post-trial defense investigations, I consider the majority's announcement of a special capital post-conviction standard to be unnecessary dicta. To the extent the majority opinion could be read not only to prohibit disclosure where considerations of witness safety outweigh the defendant's need but also to imply that disclosure of witness addresses is required except where considerations of witness safety are sufficiently weighty, I disagree.

Because I nevertheless agree with what I consider to be the holding of the case—that the trial court abused its discretion in ordering disclosure of the witnesses' addresses under these circumstances—I respectfully concur in part and dissent in part.

I am authorized to state that Justice RICE and Justice EID join in this concurrence in part and dissent in part.