2014 CO 58

**In re: The PEOPLE of the State of Colorado, Plaintiff,**

**v.**

**Sir Mario OWENS, Defendant.**

**In re: The People of the State of Colorado, Plaintiff**

**v.**

**Robert Keith Ray, Defendant.**

**Supreme Court Case No. 13SA91, Supreme Court Case No. 13SA94**

Supreme Court of Colorado.

June 30, 2014

As Modified on Denial of Rehearing August 18, 2014

Attorneys for Plaintiff: George H. Brauchler, District Attorney, Eighteenth Judicial District Emily Warren, Chief Deputy District Attorney Centennial, Colorado

Attorneys for Defendant Sir Mario Owens: James A. Castle Denver, Colorado Jennifer L. Gedde, LLC Jennifer L. Gedde Denver, Colorado C. Keith Pope Boulder, Colorado Reppucci Law Firm, P.C. Jonathan D. Reppucci Denver, Colorado

Attorneys for Defendant Robert Ray: Maria Liu Greeley, Colorado Mary Claire Mulligan Boulder, Colorado Christopher Gehring Denver, Colorado

Attorneys for Amicus Curiae Colorado District Attorneys' Council: Thomas R. Raynes, Executive Director, Colorado District Attorneys' Council Denver, Colorado Peter Weir, District Attorney, First Judicial District Donna Skinner Reed, Chief Appellate Deputy District Attorney Golden, Colorado John W. Suthers, Attorney General Paul Koehler, First Assistant Attorney General Denver, Colorado

Attorneys for Amici Curiae National Association of Criminal Defense Lawyers and Colorado Criminal Defense Bar: Blain Myhre LLC Blain D. Myhre Englewood, Colorado Haddon, Morgan and Foreman, P.C. Norman R. Mueller Denver, Colorado

Attorneys for Amicus Curiae Colorado Innocence Project: University of Colorado, School of Law Margaret Ann England Boulder, Colorado

JUSTICE COATS delivered the Opinion of the Court.

¶1 Owens and Ray petitioned pursuant to C.A.R. 21 for relief from a series of discovery rulings of the district court relative to post-conviction proceedings in their respective death penalty cases. Each had moved to discover the prosecution's investigation of the claims raised by Owens's motion for post-conviction review, on the grounds that such disclosure was required either by Crim. P. 16 or by the federal or state constitution. The district court ruled that Crim. P. 16 did not impose obligations on the prosecution with respect to its preparation to meet the defendants' post-conviction claims, but that the prosecution continued to have obligations to disclose information that was both exculpatory and constitutionally material, without regard for the time of or impetus for its discovery. We issued a rule to show cause why the district court's ruling should not be disapproved for too narrowly limiting the prosecution's discovery obligations during the unitary review proceedings prescribed by

statute for all death sentences and convictions resulting in death sentences in this jurisdiction.

¶ 2 Because Crim. P. 16 imposes disclosure obligations on the prosecution only with regard to materials and information acquired before or during trial, the district court did not err in finding it inapplicable to information acquired in response to the defendants' post-conviction claims. Because, however, we have previously held not only that a prosecutor's constitutional obligation to disclose information favorable to an accused extends through the appeal of a death sentence, but also that district courts should order the disclosure of some possibly exculpatory material, despite being unable to find a reasonable probability that nondisclosure would change the result of the proceeding, the cases are remanded with directions for the district court to apply the due process standard and procedure we announced in *People v. Rodriguez*.[1]

## I.

¶ 3 Sir Mario Owens and Robert Ray were charged with various crimes in connection with shootings that occurred on July 4, 2004 at Lowry Park in Aurora. Before any trial for the Lowry Park offenses, a prosecution witness and the witness's fiancée were murdered. Owens and Ray were later separately tried, convicted, and sentenced to death for those murders.

¶ 4 Following sentencing in their respective cases, each defendant was advised according to the unitary review procedure mandated for all post-conviction motions and appeals from death sentences and convictions resulting in death sentences. *See* §§ 16–12–201 to –210, C.R.S. (2013). As contemplated by this statutory scheme, each defendant was appointed a new set of counsel for purposes of pursuing post-conviction motions and a separate, new set of counsel for appeal of his convictions and death sentence. In July 2012, Owens filed his motion for post-conviction relief. As of the filing of his petition, Ray had yet to file a motion for post-conviction relief.

¶ 5 In January 2012, at least partially in response to this court's opinion in In re *People v. Ray*, 252 P.3d 1042 (Colo.2011), the district court issued an order, in connection with a post-trial motions hearing in Ray's case, concerning discovery matters generally and concluding that the continued applicability of the procedural rules for pre-trial discovery and investigation would be necessary for Ray's post-conviction counsel to effectively provide him the assistance contemplated by this court's opinion. Shortly thereafter, the district court ruled that this order was equally applicable to the prosecution's responsibilities in Owens's case. With regard to his own motion for post-conviction relief, Owens subsequently filed two motions for discovery. The first, filed in October 2012, was in the nature of a request for a pre-trial, or pre-hearing, order, and generally moved the court to, among other things, make clear that the prosecution's discovery obligations extended to any information or material that related to or supported Owens's post-conviction claims. The second, filed in March 2013, specifically sought the results of the prosecution's investigation of a particular post-conviction claim advanced by Owens, asserting misconduct by one of the jurors in the underlying Lowry Park trial.

¶ 6 The first of Owens's discovery motions contended that all material or information learned from the prosecution's investigation of Owens's post-conviction claims was made discoverable either by Crim. P. 16 or the state or federal constitution. After hearing the matter, the district court effectively distinguished its general discovery order in connection with Ray's case and ruled that Crim. P. 16 does not apply to information acquired by the prosecution in preparing to meet the claims of a defendant's motion for post-conviction relief permitted by the rules of criminal procedure implementing the unitary review prescribed for death penalties. And, while all parties proceeded under the assumption that the prosecution would have to disclose so-called *Brady* material, much discussion ensued on the appropriate scope of what that duty encompassed.

1. 786 P.2d 1079 (Colo.1989).

¶ 7 Several months later, Owens again moved to obtain materials and information from the prosecution's investigation into his post-conviction claims, this time specifically focusing on the prosecution's investigation of Owens's post-conviction claim of juror misconduct in the earlier Lowry Park trial. In his motion for post-conviction relief, Owens asserted that his trial counsel had been ineffective, in part because of their failure to move to exclude his Lowry Park convictions from consideration as aggravating factors at the death penalty phase of his trial. As to this motion, the district court essentially reaffirmed its prior ruling but clarified that the prosecution would have an ongoing obligation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose information that was both exculpatory and constitutionally material.

¶ 8 In preparation for filing his own post-conviction motion, Ray also moved to obtain discovery from the prosecution's investigation of Owens's post-conviction claims. Without deciding whether Ray would have standing to pursue discovery related to the prosecution's investigation of his co-defendant's separate claims, the district court denied the motion, in any event, for the same reasons it had denied Owens's discovery motions.

¶ 9 Owens and Ray immediately petitioned for relief pursuant to C.A.R. 21, and we issued our rule to show cause.

## II.

¶ 10 In 1997, the General Assembly enacted a unique statutory scheme for the review of death penalties and convictions resulting in death penalties. §§ 16–12–201 to –210. The legislature's accompanying declaration, as well as the specific provisions of the Act themselves, make clear that it was motivated by a desire to expedite the state process of review in death sentence cases and, particularly, to avoid the delays associated with sequential appellate reviews of the initial trial and subsequent post-trial matters. *See id.* The central mechanism by which the scheme seeks to accomplish this goal is a mandate that all post-conviction motions, including those requiring the development of an additional record, such as certain challenges to the effectiveness of trial counsel, be resolved by the district court before any appellate review of the conviction and sentence; and that appellate review of the district court's rulings on all post-conviction claims be combined, in a single unitary review proceeding, with appellate review of the defendant's assignments of error committed at the trial or sentencing phase. *See* § 16–12–207, C.R.S. (2013).

¶ 11 The legislature tasked this court with the promulgation of rules of procedure implementing the statutory scheme, to include delineating specific obligations of both the post-conviction court and counsel, as well as specific timelines for concluding district court functions and presenting the case to this court for ultimate review. § 16–12–208, C.R.S. (2013); *see also People v. Owens*, 228 P.3d 969, 971 (Colo.2010). In response, we promulgated Crim. P. 32.2, entitled "Death Penalty Post–Trial Procedures." This rule provides for the immediate advisement of the defendant concerning his right to two sets of new and different counsel—one to pursue any post-conviction claims permitted by statute and the other to pursue an appeal of his conviction and sentence—and it mandates procedures and timelines for the simultaneous preparation of both appeal and post-conviction motion; timely resolution by the post-conviction court of all post-conviction claims; and the preparation of an adequate record and presentation in a single appeal of all assignments of error related to the defendant's death sentence and his conviction resulting in that sentence. Crim. P. 32.2.

### A.

¶ 12 The statutory scheme similarly leaves to this court the promulgation of specific discovery procedures to govern the unitary review proceedings. *See* § 16–12–208(2)(e). In its only provisions directly related to discovery, Crim. P. 32.2 mandates that within seven days[2] of this advisement date, the district court is to order the prosecuting attorney to deliver to defense counsel

---

2. Formerly five days.

a copy of all material and information in his possession or control, except material previously provided, "that is discoverable under Crim. P. 16 or pertains to punishment," Crim. P. 32.2(b)(3)(III); and similarly to order the defendant's trial counsel to turn over his file to the defendant's new counsel within the same seven-day timeframe, Crim. P. 32.2(b)(3)(IV). In their petitions to this court, the defendants assert that the district court failed to appreciate that this court's reference to Crim. P. 16, at Crim. P. 32.2(b)(3)(III), was intended "to impose a mandatory, continuing duty to comply with the disclosure procedures established by Crim. P. 16 during capital post-trial proceedings," and they challenge the court's failure to direct the prosecution accordingly. In light of the text of the rule itself, as well as the context in which the reference to Crim. P. 16 appears and the declared purposes of the statutory scheme it was promulgated to implement, this interpretation is simply untenable.

■ ¶ 13 We have in the past indicated that we will largely construe our own rules of procedure according to the same principles that govern our construction of statutes promulgated by the legislature. *See In re Bass*, 2013 CO 40, ¶ 9, 307 P.3d 1052. If the specific language of a rule lends itself to more than one reasonable understanding, such considerations as context in a broader scheme and the purpose to be served by the scheme as a whole can often provide insight into the intended meaning of that language. *See Dep't of Transp. v. Gypsum Ranch Co.*, 244 P.3d 127, 131 (Colo.2010). Even if the brief reference to Crim. P. 16 could, on its face, be reasonably understood to incorporate that rule in its entirety and thereby extend its applicability beyond trial to post-conviction matters, context and related provisions of the rule and statute strongly militate against any such construction.

¶ 14 Rule 32.2's sole reference to Crim. P. 16 appears in conjunction with the appointment of one set of new counsel to represent the defendant on direct appeal and another set of new counsel to represent him on post-conviction matters, *see* Crim. P. 32.2(b)(3)(I), in lieu of the trial counsel to whom all prose-

cution disclosures, concerning both trial and death penalty sentencing, had thus far been made. In order to adequately represent the defendant, these new counsel would clearly need some mechanism to ensure their access to all pre-trial and all pre-penalty phase discovery. Rather than implying a highly impactful expansion of Rules 16 and 32.1, the straightforward provisions of Crim. P. 32.2(b)(3)(III) and (IV) are most naturally understood, according to their plain language, as simply providing that mechanism. The former subsection requires that the prosecuting attorney be ordered to deliver to the new counsel for the defendant all material in his possession that is discoverable under Crim. P. 16 or pertains to punishment, Crim. P. 32.2(b)(3)(III), and the latter similarly mandates an order directing the defendant's trial counsel to deliver to the newly appointed counsel a copy of their entire file, Crim. P. 32.2(b)(3)(IV).

¶ 15 In addition, however, a number of other considerations militate against any intent to extend Crim. P. 16 beyond its expressly stated boundaries. The requirement of Crim. P. 32.2(b)(3)(III) for all material discoverable under Crim. P. 16 to be delivered within seven days strongly implies an already existing body of material, rather than one expected to grow and require disclosure throughout the proceedings. Furthermore, no such incorporation by implication was attempted in Crim. P. 32.1, the separate rule governing the death penalty sentencing hearing itself, which instead provides for explicit disclosure requirements, in terms appropriate to, and with time periods expressly tailored for, death phase proceedings. Of perhaps greatest significance, notwithstanding a superficial analogy between a criminal trial and a hearing on post-conviction claims, each involving as it does evidentiary presentations, the juxtaposition of parties, and therefore burdens, renders any such analogy wanting. Unlike a trial of criminal charges or death phase sentencing proceeding, in each of which the defendant must be made aware of, in order to defend against, the evidence marshalled against him, in hearings on post-trial motions, the respective roles of the parties are reversed, and the defendant is afforded an opportunity to go forward with allegations

of his own, against which the prosecution must then defend. *See, e.g., Dunlap v. People,* 173 P.3d 1054, 1061 (Colo.2007) (the defendant bears the burden of proving his post-conviction claims by a preponderance of the evidence). For this reason, if none other, the very structure of rules designed to govern pre-trial and pre-death penalty sentencing disclosures precludes them from any meaningful extension by implicit incorporation to post-conviction proceedings.

## B.

¶ 16 Crim. P. 32.2(b)(3)(III) notwithstanding, the absence of specific discovery provisions to govern unitary review proceedings is, however, neither surprising nor indicative of any gap suggesting an alternate construction. Apart from requiring that before a motion for post-conviction relief may be granted, a copy must be served on the prosecution, Crim. P. 35(c)(3)(V), the Colorado Rules of Criminal Procedure have never expressly provided specific discovery procedures for post-conviction proceedings; and it is undisputed that district courts have the inherent authority to manage their dockets through scheduling orders requiring the endorsement of witnesses and other timely disclosures, as they deem necessary to avoid delay-causing surprise at evidentiary hearings on post-conviction claims, just as at criminal trials, *see, e.g., People v. Jasper,* 17 P.3d 807, 812 (Colo.2001) ("[T]he setting of deadlines for pretrial matters constitutes an integral part of a trial court's case management authority."). With regard to due process protections for criminal defendants, at the time the legislature promulgated the unitary review procedure for death penalty cases, this court had already published an Opinion and Order admonishing district courts, pending the automatic review of death sentences mandated by statute in this jurisdiction, to permit even broader disclosure of favorable evidence than required of the prosecution prior to conviction and sentence. *See Rodriguez,* 786 P.2d at 1082.

¶ 17 In *Rodriguez,* where the prosecution moved for a remand to determine whether disclosure would be required of certain possibly exculpatory evidence recently coming into its possession, we endorsed a review procedure similar to that utilized in *Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). *Rodriguez,* 786 P.2d at 1082. In that instance, we specifically ordered the district court to evaluate the nature, significance, and materiality of the evidence and disclose to the defense not only any possibly exculpatory evidence meeting the materiality standard of *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (finding evidence constitutionally material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"), but also possibly exculpatory evidence not rising to that level of materiality, as to which the prosecution had failed to show a compelling interest in withholding. *Rodriguez,* 786 P.2d at 1082.

¶ 18 An automatic review of death sentences by this court remains a statutory mandate in this jurisdiction, § 18–1.3–1201(6)(a), C.R.S. (2013); *see also People v. Montour,* 157 P.3d 489, 492–93 (Colo.2007), and the purposes of the unitary review procedure serve to strengthen, rather than weaken, our rationale in *Rodriguez.* Where compelling countervailing considerations, as for instance witness safety, are not at issue, we continue to consider it preferable to leave for this court, with the assistance of both parties, the ultimate determination whether possibly exculpatory evidence would affect the propriety of a death sentence; and doing so in a single appellate proceeding rather than piecemeal, following sequential challenges to, and appeals of, the materiality predictions of either a prosecutor or district court, furthers the purposes of unitary review.

¶ 19 Whether or not the due process framework articulated in *Brady* and its progeny would otherwise apply to post-conviction proceedings in death penalty cases, *cf. Dist. Attorney's Office v. Osborne,* 557 U.S. 52, 68–69, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009) (holding the *Brady* framework inapplicable to post-conviction proceedings generally), we have long-since concluded that the constitutional requirement to disclose favorable evidence continues, at least through the auto-

matic review by the supreme court required in this jurisdiction, *Rodriguez,* 786 P.2d at 1082. By the same token, because the unitary review procedure in death penalty cases requires all post-conviction motions to be resolved by the district court prior to any appellate review of the death sentence itself, *see* § 16–12–207; *see also* Crim. P. 32.2(c)(3), the rationale of *Rodriguez* is equally applicable to post-conviction motions filed pursuant to this unitary review procedure. Whether the duties and procedure we have prescribed in *Rodriguez* are better characterized as a state post-conviction relief procedure, *see Osborne,* 557 U.S. at 69, 129 S.Ct. 2308 (cautioning against upsetting a state's post-conviction relief procedures unless they are fundamentally inadequate), or the application of federal substantive due process requirements to the unique death penalty procedures of this jurisdiction, it is at least clear that the Supreme Court has never overruled *Rodriguez* nor held, even in non-death penalty cases, that a prosecutor's due process obligation to disclose exculpatory material terminates before the defendant's conviction becomes final, *see, e.g., Fields v. Wharrie,* 672 F.3d 505, 515 (7th Cir.2012) (distinguishing *Osborne* and explaining that a prosecutor's disclosure responsibilities do not end until a defendant's conviction becomes final).

¶ 20 In *Rodriguez,* while we both admonished district courts, in the absence of compelling reasons to do otherwise, to order the disclosure of some evidence favorable to defendants laboring under a death sentence despite not being able to find it constitutionally material and used the term "possibly exculpatory evidence," in order to discourage nondisclosure of material as to which the exculpatory nature or likely effect was subject to reasonable dispute, we did not intend thereby any alteration in the fundamental character of evidence categorized by the United States Supreme Court as "favorable." *See* 786 P.2d at 1082. In subsequent holdings, the Supreme Court has characterized *Brady* as relating only to concealing evidence favorable to the accused, not providing the defense with notice that will improve its preparation for meeting the government's evidence. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); *see also Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching. . . .").

¶ 21 Although the clear distinction between evidence of guilt or innocence and evidence that would merely be strategically useful for trial preparation has at times been addressed in terms of materiality rather than favorability, *see, e.g., United States v. Agurs,* 427 U.S. 97, 112 n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), it is indisputably the case that so-called *Brady* material includes only evidence of the former nature; and our direction in *Rodriguez* for district courts to order disclosure, in a narrow class of death cases, notwithstanding *Bagley*'s "reasonable probability" standard, was never intended to override that distinction. Despite being subject to the more liberal disclosure requirements of *Rodriguez,* relative to post-conviction motions filed pursuant to the unitary review procedure, material or information nevertheless does not amount to favorable evidence merely because it would assist the defendant in structuring the presentation of his assignments of error to better avoid the impact of the prosecution's response.

## III.

¶ 22 In its various orders, the district court apparently sought to distinguish information or material uncovered by the prosecution in an attempt to meet the claims of the defendant's post-conviction motion from information or material pertaining to the defendant's conviction or sentence, or his investigation of possible post-conviction claims. Its attempt to draw this fine distinction appears to have resulted from a mistaken notion that Crim. P. 32.2(b)(3)(III), as well as our holding in *Ray,* 252 P.3d at 1049, implicitly required the extension of Crim. P. 16 to unitary review proceedings. Whatever its precise reasoning, the district court did not err in finding Crim. P. 16 inapplicable to information ac-

quired by the prosecution in preparation for meeting the claims of a defendant's motion for post-conviction relief, for the simple reason that the requirements of Crim. P. 16 have not been extended beyond the facial applicability of that rule to information and material acquired prior to and during trial.

 ¶ 23 Notwithstanding the assertion of the prosecution to the contrary, the district court also did not err in finding that due process of law requires the disclosure of material or information favorable to the defendant and constitutionally material, including such information coming into the prosecution's possession even after the defendant's trial and sentencing. To the extent, however, the district court's ruling could be understood as the exclusive ground for requiring disclosure by the prosecution, that ruling fails to account for our holding in *Rodriguez*, admonishing district courts to evaluate and order the disclosure of all possibly exculpatory evidence in the possession of the prosecution, as to which the prosecution fails to show a compelling interest in nondisclosure, whether or not the court is able to find a reasonable probability that its nondisclosure would change the result of the proceeding.

## IV.

¶ 24 The Rules are therefore made absolute in part and discharged in part, and the matters are remanded with directions for the district court to apply the due process standard and procedure we announced in *People v. Rodriguez.*